[Civ. No. 8642.   Third Dist.   Sept. 19, 1955.]

PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant, v. SHASTA DAM AREA PUBLIC UTILITY DISTRICT et al., Respondents.

464

Robert H. Gerdes, William S. Love and Chenoweth & Leininger for Appellant.

Carlton & Shadwell, Daniel S. Carlton and Robert A. Haughwout for Respondents.

SCHOTTKY, J.—Appellant corporation filed the instant action, as a taxpayer, against the respondent public utility district to enjoin the issuance of $150,000 in bonds for the construction of an electrical distribution system. A temporary restraining order was issued, and thereafter a full hearing was held on the merits of the case. Judgment was entered in favor of respondent district, and the temporary injunction was dissolved and a permanent injunction denied. This appeal is from said judgment.

Appellant makes two major contentions upon this appeal: (1) The issuance of $150,000 in bonds would exceed the authorized debt limit of the respondent district; (2) the respondent district failed to obtain an estimate of the cost of acquiring the existing distribution system of appellant company and therefore the bonds were not validly authorized in accordance with statutory requirements.

The factual situation is not in substantial dispute and we shall detail it briefly before discussing the contentions of appellant.

The Shasta Dam Area Public Utility District was formed under the 1921 Public Utility District Act, now Public Utilities Code, division 7. It embraces an unincorporated area in Shasta County centered around the community of Central Valley in the vicinity of Shasta Dam. In August, 1953, the district called an election to present to the voters two questions: (1) authorization of a $150,000 bond issue to construct an electric distribution system, and (2) authorization of a $50,000 bond issue to construct and improve a water system. Both were approved in the election. At the commencement of this action all the preliminary steps to issuance of the $150,000 bond issue had been completed, but apparently the other issue was not being carried through, and on trial the latter as an issue for the court was dropped and it is not presented on this appeal.

The Public Utility District Act (Pub. Util. Code, § 16573) states: "No district shall incur any funded indebtedness which in the aggregate exceeds 20 percent of the assessed

valuation of all real and personal property situated within the district.''

Facts found by the court pursuant to stipulation were that for 1953-1954 the Shasta County assessor assessed all real and personal property in the district at $1,175,280; that the assessor received from the State Board of Equalization an additional assessed valuation of utility properties within the district of $94,140; that the total assessed value of all property within the district, as equalized and corrected, was $1,269,420; that the value of tax-exempt property within the district for 1953-1954 was $190,425; that after deducting exemptions, the Shasta County auditor determined the total assessed value of all real and personal property within the district for tax purposes was $1,078,925; and that the outstanding indebtedness of the district at the time of trial was $94,000.

Thus, if the 20 per cent debt limitation is computed on the total assessed valuation of all real and personal property in the district, whether tax-exempt or not, the proposed indebtedness plus existing indebtedness is within the legal limitation. If it is computed on the total assessed valuation of all taxable property, i.e., excluding tax-exempt property, the legal limitation is exceeded.

Appellant bases its first major contention that the issuance of $150,000 in bonds would exceed the authorized debt limits of the respondent district upon the following grounds:

(1) The general purpose of debt-limitation statutes, and this one in particular, is to protect the taxpayer from confiscatory taxation, and to effect this purpose the debt limitation must be measured by or bear some relation to the burden of debt. This was the intent of the statute.

(2) The term ''assessed valuation'' is construed to mean the taxable value of property, and property exempt from taxation does not have an ''assessed valuation.''

(3) Assessed valuation must be determined according to a final and completed assessment roll, and such roll consists exclusively of the taxable property. The assessor prepares an assessment roll of taxable property, except certain utility property, the board of supervisors sits and equalizes taxable property, and then the State Board of Equalization equalizes the value of taxable property for purposes of taxation; but these last two bodies act only upon taxable property in determination of the final assessment roll as completed and equalized. By law all exemptions except welfare must be claimed at least 30 days before the assessor has completed

preparation of the assessment roll, citing Revenue and Taxation Code, sections 255 and 405.

Respondents in reply contend (1) that the plain words of the statute say the allowable indebtedness is measured by assessed valuation of all property, whether subject to taxation or not, and if the Legislature had intended otherwise it would have said so; (2) that all property assessed acquires an assessed valuation within section 16573 of the Public Utilities Code, regardless of whether exemptions are claimed, allowed, and deducted eventually for taxation purposes. All private property throughout the state is assessed, and the burden of proving exemptions is on the taxpayers or they will be waived. On the other hand, certain public property is by the Constitution exempt and does not appear on the assessment rolls. The taxable value of property on the assessment roll is only derived after the auditor, not the assessor, has entered allowed deductions. The assessment roll is compiled by the assessor and the assessed valuation of property therein is the cash value, and taxable value is only arrived at by the auditor in the exercise of his functions.

It cannot be doubted that the purpose of debt limitation statutes is, as argued by appellant, to protect the taxpayer from confiscatory taxation. Nor can it be doubted that any such statute must be construed with reference to the evil the Legislature sought to remedy. Appellant states:

"The logic of the proposition stated is self-evident. Boards of directors of a public utility district are required to levy a tax sufficient to pay the interest and principal due on all bonds (P.U.C., § 16643), and such a tax is a lien on the property upon which it is levied (P.U.C., § 16658). Since nontaxable property is not threatened by burdensome taxation the safeguard afforded by section 16573 was obviously intended to protect the taxpayer, the owner of taxable property.

"If the purpose of Section 16573 is to protect the taxpayer, it is clear that the expression 'assessed valuation of all . . . property' can only include taxable property; the inclusion of any other property would inject an entirely foreign and false quantity into the computation of the debt limit which would increase it, entirely without regard to the resultant increased burden on the taxpayer. We do not believe the legislature so unrealistic as to have intended permissible indebtedness to be dependent upon a factor which bears no relationship to ability to liquidate the debt."

It is apparent that the question which we must determine

is the meaning of the following language of section 16573 of the Public Utilities Code: "assessed valuation of all real and personal property." ▉ In construing a statute we must bear in mind the language of section 1858 of the Code of Civil Procedure which provides that "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained thereon, not to insert what has been omitted, or to omit what has been inserted"; and that section 1859 provides that "In the construction of a statute the intention of the legislature . . . is to be pursued, if possible."

▉ Much has been written in many decisions upon the somewhat nebulous subject of legislative intent, and while in bygone years, before the Legislature had the advice and assistance of a highly trained and very efficient Legislative Counsel Bureau, it may have been necessary for courts to read something into statutes which was not specifically expressed therein in order to carry into effect the obvious intent of the Legislature, we believe that the better and more modern rule of construction is to construe a legislative enactment in accordance with the ordinary meaning of the language used and to assume that the Legislature knew what it was saying and meant what it said.

When the Legislature in 1921 passed an act providing for the incorporation of public utility districts in unincorporated areas and for the government of said districts (Stats. 1921, ch. 560), the following language was made a part of the eighth paragraph of section 30 of said act: "No district shall incur any funded indebtedness which shall in the aggregate exceed 20 per centum of the *assessed valuation of all real and personal property* situated within the district." (Italics added.) Said eighth paragraph of said act was amended in 1933 and again in 1941 but the above-quoted language was not changed. In 1953 the Public Utility Act became division 7 of the Public Utilities Code and the identical language above quoted became the present section 16573 of the Public Utilities Code.

▉ Appellant makes a forceful and persuasive argument in favor of its contention that the term "assessed valuation" means the taxable value of property and that property exempt from taxation does not have an "assessed valuation." Appellant cites numerous authorities from other jurisdictions construing tax limitation statutes but none of them is worded like the statute we have here under consideration,

and no California case has been cited construing said section 16573. In order to agree with appellant's contentions that "assessed valuation" means "taxable value" we would have to assume that the Legislature meant something that it could so easily have expressed, and did express, in other statutes relating to tax districts. It is interesting to compare said section 16573 of the Public Utilities Code with similar provisions applicable to other political subdivisions of the state. Some of these are:

CITIES: "A city shall not incur an indebtedness for public improvements which exceeds in the aggregate 15 percent of the assessed value of all real and personal property of the city." (Gov. Code, § 43605.)

COUNTIES: "The total amount of bonded indebtedness shall not at any time exceed 5 per cent of the taxable property of the county as shown by the last equalized assessment roll. If water conservation, flood control, irrigation, reclamation, or drainage works, improvements, or purposes are included in any proposition submitted, the total amount of bonded indebtedness may exceed 5 per cent but shall not exceed 15 per cent of the taxable property of the county as shown by the last equalized assessment roll. This limitation does not apply to bonds issued to refund an indebtedness existing January 1, 1880." (Gov. Code, § 29909.)

SCHOOL DISTRICTS: "The total amount of bonds issued shall not exceed 5 per cent of the taxable property of the district as shown by the last equalized assessment of the county or counties in which the district is located." (Ed. Code, Bonds, § 7431.)

"The total amount of bonds issued shall not exceed 5 per cent of the taxable property of the district, as shown by the last equalized assessment book of the county." (Ed. Code, Library Districts, § 22408.)

"The total amount of bonds issued shall not exceed 5 per cent of the taxable property of the district, as shown by the last equalized assessment book of the county." (Ed. Code, Libraries—Union High School Districts, § 23022.)

HIGHWAY DISTRICTS: "The total amount of bonds so issued shall not exceed fifteen per cent of the taxable property of the division as shown by the last equalized assessment roll of the county." (Sts. & Hy. Code, § 1184.)

"No bonds shall be issued by the district in an amount which will aggregate at any time an obligation in excess of 10 per cent of the assessed value of the aggregate total

taxable property within the district as shown by the then current taxation assessment rolls of the several counties within the district." (Sts. & Hy. Code, § 25376.)

"The amount of debt to be incurred, which shall not exceed 15 per cent of the assessed value of all taxable property in the district." (Sts. & Hy. Code, § 27220, subd. (b).)

RECREATION AND PARK DISTRICTS: "Money may be borrowed by the trustees of a district for the purpose of erecting a structure or the carrying on of any work or project authorized by this article or for the making of improvements or the purchase of equipment, or for the maintenance thereof. The amount of money to be borrowed shall not exceed an amount equal to 25 per cent of the total amount of taxes paid to a district for the preceding year." (Pub. Resources Code, § 5458.)

". . . the board may incur an indebtedness not to exceed 5 per cent of the assessed valuation of the real and personal property situated in the district. It may issue bonds for such indebtedness under and in full compliance with the provisions of Title 4, Division 4, Chapter 4, Article 1 of the Government Code." (Pub. Resources Code, § 5568.)

SANITARY DISTRICTS: "The outstanding bonds of the district shall not at any one time exceed fifteen per cent of the assessed value of the real and personal property in the district." (Health & Saf. Code, § 6651.)

It is to be noted that the State of California has used various methods of limiting the borrowing power of its subdivisions and that these limitations may be classified as follows:

1. The amount of taxes paid to the subdivision in previous years.

2. Percentage of the assessed value of taxable property.

3. Percentage of the assessed value of all property.

The trial judge in his memorandum opinion stated:

"The words 'assess' and 'assessment' have varying shades of meaning. The synonyms of the verb 'assess' are: 'charge, levy, tax, value.' For the noun 'assessment,' we find: 'valuation, levy, fee.' For the purpose of district taxation, the Court must assume that 'to assess' is to evaluate, or place a value upon; and that an 'assessment' is not a levy, but is the valuation found by the assessor and the Board of Equalization of the property within the district, as directed by law. (It must be assumed that the assessing agencies have performed their duties.)

"Does the phrase 'the assessed valuation of all . . . property situated within the district' include exempt property?

"All property in the state not exempt under law is subject to taxation. (Rev. & Tax. Code, § 201.)

"Claims of exemption may be waived. (Rev. & Tax. Code, § 260.)

"Certain exemptions are for only a limited amount. (Const., art. XIII, §1¼.)

. . . . . . . . . . . . .

"It is apparent that much property must be 'assessed' and entered upon the rolls of the taxing agencies although a portion of it is exempted from the base tax for levy and collection of taxes. Does the happenstance of claim for exemption from taxation then require the amount of the exemption to be deducted from 'the assessed valuation of all . . . property situated within the district'? The property of the veteran must be 'assessed' in order to determine whether the veteran may even have the right to claim an exemption under the constitutional provision above referred to. When the assessment is made and it is found that the valuation is below the $5,000.00 maximum and the veteran has claimed his exemption according to law, then and then only shall property of the value of $1,000 be exempt as to that veteran. The fact of the granting of the exemption does not reduce 'the assessed valuation of all . . . property situated within the district.' (*Keene Five-Cent Sav. Bank* v. *Lyon County* (1898), 90 F. 523.)

"The legislature was free to fix a limitation upon the indebtedness which the district might incur and could use as the basis of that limitation whatever yardstick it desired. It chose in the case of the cities, utility districts and certain subdivisions of the State, to limit bonding capacity to a percentage of the assessed value of *all* property within the taxing unit; it chose in the case of counties, schools, and certain other subdivisions of the State, to limit to a percentage of the assessed value of *taxable* property. As stated by the author of McQuillin on Municipal Corporations:

" 'The question (of the basis of debt limitation) is to be solved by the terms of the particular constitutional or statutory provisions.' "

We agree with this analysis.

Appellant argues that under section 16573 tax-exempt property must be excluded and that "Unless the view is accepted that section 16573 was not, like other debt limitation statutes,

intended to protect the taxpayer but was merely intended to relate maximum indebtedness of public utility districts to a base which bears no relationship to ability to repay the indebtedness, no other interpretation can be made.''

■ This argument of appellant merely goes to the wisdom or policy of making the assessed valuation of all real and personal property the base for calculating the permissible amount of funded indebtedness. That the Legislature had the power to fix such a base cannot be doubted. We believe that the Legislature was fully aware that in nearly every district there would be certain exemptions claimed and allowed for veterans, schools, churches, hospitals, etc., and that such property would be given an assessed valuation by the assessor. If it had intended that the amount of such exemptions should be deducted from the assessed valuation in public utility districts to arrive at a base for debt limitation, it could easily have said so. And in fixing the percentage at 20 per cent it no doubt took all of the factors into consideration and concluded that a limitation of ''20 per cent of the assessed valuation of all real and personal property'' within the utility district was sufficient to protect the taxpayer. It is not without significance that the language of section 16573 has remained unchanged since 1921, although the act of which it is a part has been amended many times, and although many other statutes fixing different bases for calculating the permissible amounts of funded indebtedness have been enacted by the Legislature. ■ We believe that the following quotation from 23 California Jurisprudence, at p. 759, is apropos:

''. . . Any construction should be avoided which implies that the legislature was ignorant of the meaning of the language as employed, or that it used words in vain, the legal intendment being that each and every word or clause was inserted for some useful and sensible purpose, and that, when rightly understood, it may have some practical operation.''

Appellant's second major contention is that failure to make an estimate of the cost of acquiring existing public utility works of the same character as those proposed to be constructed invalidates the proceedings authorizing the issuance of bonds for the construction of such works.

The proposed electrical system would parallel existing facilities of the plaintiff, Pacific Gas and Electric Company. The district obtained no estimate of the cost of acquiring these existing facilities before proceeding with the bond issue

for new facilities. Offers for sale of the existing facilities to the district were solicited, by plaintiff, but were declined. The district concluded the court costs of condemnation of same would have been prohibitive, and for this reason did not obtain an estimate.

██ Public Utilities Code, section 16804, requires estimates of the cost of construction of new works be obtained by the district before formulating a proposition for constructing a new utility or acquiring an existing one. This was done before the bond issue was submitted to the electorate. Said section also provides in the case of the proposed acquisition of existing public utility works, an estimate of cost of construction of a similar works be obtained.

Appellant contends that sections 16801, 16804, 16806-16809, must be construed together, and so construed together show a legislative intent that if construction of new utility works is submitted, estimates of the cost of acquiring existing utilities must be first obtained. Appellant states:

''Section 16804 requires estimates of the cost of new construction be obtained before submitting the proposition of acquiring existing utilities. We believe the legislature intended the converse to be true, that is, if the construction of new utilities is contemplated, before submitting a proposition therefor, estimates must be obtained of the cost of acquiring existing utilities. Only by obtaining such an estimate can the District be assured of obtaining the desired utilities at the least possible cost. This is the only logical purpose of Section 16804 and to be consistent with this purpose, Sections 16806 through 16809 must be construed as requiring an estimate in the situation not covered by Section 16804.''

Section 16804 by its terms does not so require. And the only other pertinent section, taken by itself, is 16807 which says the district *may* apply to the Public Utilities Commission for a valuation of existing works for the purpose of submitting to the electors estimates of the cost of acquiring them. So, by its terms it does not require, either, that the district obtain estimates of the cost of acquiring existing utilities before formulating and submitting a proposition for construction of new works. It is clear from the record that respondent district at no time proposed acquiring existing utility works and at no time sought to submit any such proposition to the electorate for its approval.

Appellant's argument is but an argument as to the policy

of the legislation. It seeks to read into the statute what it believes that the Legislature should have provided. We are not concerned with the wisdom or policy of the legislation but must take it as written into the act by the Legislature. As this court said in *Beard Land & Inv. Co.* v. *California Emp. Stab. Com.*, 131 Cal.App.2d 475, at page 479 [280 P.2d 841]:

"Public policy is a matter for determination by the Legislature and courts have no right to interfere with such determination by the Legislature so long as no constitutional right or guaranty has been infringed upon. As was well said by that great jurist, Justice Stephen J. Field, in the early California case of *Ex parte Newman*, 9 Cal. 502, at page 520: 'It is not for the judiciary to assume a wisdom which it denies to the Legislature, and exercise a supervision over the discretion of the latter. It is not the province of the judiciary to pass upon the wisdom and policy of legislation; and when it does so, it usurps a power never conferred by the Constitution.' "

In view of the foregoing we conclude that the trial court correctly determined that the proposed $150,000 bond issue was within the bonding limitation of respondent district and that respondent district did comply with the provisions of the Public Utilities Code.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 16, 1955.