[Civ. No. 47724. Second Dist., Div. Five. Jan. 7, 1977.]

EDUCATIONAL AND RECREATIONAL SERVICES, INC.,
Plaintiff and Appellant, v.
PASADENA UNIFIED SCHOOL DISTRICT et al.,
Defendants and Respondents.

## COUNSEL

Alvin S. Midler and Ronald M. Sohigian for Plaintiff and Appellant.

John H. Larson, County Counsel, Donovan M. Main, Deputy County Counsel, Joslyn, Roeth, Angerhofer, Olds & Condon and R. B. Joslyn for Defendants and Appellants.

## OPINION

**HASTINGS, J.**—This is an appeal by Educational and Recreational Services, Inc. (ERS), also doing business as Associated Charter Bus Company (Associated) from a judgment denying its petition for a writ of mandate.

## Statement of Facts

The Pasadena Unified School District (District or Board, as appropriate), respondent, published an invitation for bids to furnish school bus transportation. At the time the invitation for bids was issued, there were in existence three contracts for school busing, one with respondent Embree Buses, Inc. (Embree) for 20 buses, one with ERS for busing the handicapped, and another with ERS for the balance of the District's busing needs. These contracts each had options for renewal. Embree did not negate the option and thus District retained the option to renew the rental for Embree's 20 buses. ERS negated its option, preventing District from renewing with it. District asked for bids for up to 91 buses. Embree bid the entire proposal, as did ERS. Another company (Brock Bus Lines) bid on only a portion of the contract. Embree's bid on the handicapped bus contract was accepted by District, but that contract is not at issue in this case.

Embree's contract for 20 buses with District was renewed at a 5 percent increase as provided in the contract, and District then awarded the balance of the school bus contract to Embree in accordance with its bid.

The bids were not identical; however, as demonstrated *infra,* details on the specific differences are not required for this opinion, except as referenced.

Important to this appeal are three findings[1] of the trial court. In sum, they state that District had met and considered the bids at three public meetings. That terms of the bids were not modified by District in its award of the contract to Embree and that ERS was the low bidder based on price quotations for the full estimated service requirements of 91

---

[1]Specifically, the three findings were:

"The award of the contract for transportation was considered and discussed by and before the Board of Education of the Pasadena Unified School District at public meetings of the Board held on April 14, 22 and 29, 1975." (Finding 8.)

"The terms of the Invitation for Bids were not modified in any manner by the Board of Education in its award to defendant Embree or in the contract prepared pursuant to said award." (Finding 10.)

"Plaintiff was the low monetary bidder on the transportation contract based upon price quotations for provision of the full estimated service requirements of 91 buses, and the award of the contract to defendant Embree on that basis constituted an award to other than the low monetary bidder pursuant to Section 16802 of the Education Code and the reservations in the Invitation for Bids." (Finding 12.)

buses, and the award to Embree constituted an award to other than the low monetary bidder pursuant to section 16802 of the Education Code,[2] and the reservations in the invitation to bid.

## ISSUES

ERS frames its contentions on appeal as follows:

1. Education Code section 16802[3] requires that the contract be awarded to the lowest responsible bidder.

2. District's "proposal" required it to award the contract to ERS.

3. The actions of respondents have denied ERS equal protection of the law.

4. The principles of due process require that the lowest monetary bidder be given an opportunity to be heard before a contract is awarded to a higher bidder.

---

[2]Education Code, section 16802 provides as follows: "In order to procure the service at the lowest possible figure consistent with proper and satisfactory service, the governing board shall, whenever an expenditure of more than five thousand dollars ($5,000) is involved, secure bids pursuant to Sections 15951 and 15952 whenever it be contemplated that a contract may be made with a person or corporation other than a common carrier or a municipally owned transit system or a parent or guardian of the pupils to be transported. The governing board may let the contract for the service to other than the lowest bidder. No board shall make any purchase or enter into any contract for the service without securing the written approval of the county superintendent of schools."

Education Code, section 15951 provides as follows: "The governing board of any school district shall let any contracts involving an expenditure of more than five thousand dollars ($5,000) for work to be done or more than eight thousand dollars ($8,000) for materials or supplies to be furnished, sold, or leased to the district, to the lowest responsible bidder who shall give such security as the board requires, or else reject all bids. This section applies to all materials and supplies whether patented or otherwise."

Education Code, section 15952 provides as follows: "For the purpose of securing bids the board shall publish at least once a week for two weeks in some newspaper of general circulation published in the district, or if there is no such paper, then in some newspaper of general circulation, circulated in the county a notice calling for bids, stating the work to be done or materials or supplies to be furnished and the time when and the place where bids will be opened. Whether or not bids are opened exactly at the time fixed in the public notice for opening bids, a bid shall not be received after that time."

[3]Unless otherwise stated, all code section references are to the Education Code.

## ARGUMENT AND DISPOSITION

1. The threshold issue in this case is the interpretation to be given section 16802. Embree and District state that the section is clear and unambiguous and requires District to secure bids and to award the contract to the bidder that District determines can best perform the service at the lowest possible figure consistent with *proper and satisfactory service.* They claim the sentence authorizing District to let the contract to other than the lowest bidder clarifies the discretionary authority of District as long as it awards the contract within the delineated flexible standard emphasized above.

ERS, on the other hand, claims there is a general pattern in the law of public contracts which requires that the contract, after competitive bidding, must be awarded to the *lowest responsible bidder.* It argues that section 16802 is consistent with this public policy in that the combination of the elements mentioned in the section's first four lines, namely, lowest price plus satisfactory service, invokes essentially this standard because this term denotes reference to the quality, fitness, and capacity of the low bidder to satisfactorily perform the proposed work. (*City of Inglewood-L.A. County Civic Center Auth.* v. *Superior Court,* 7 Cal.3d 861, 867 [103 Cal.Rptr. 689, 500 P.2d 601].) Therefore, even though the section later unequivocally states that "[t]he governing board may let the contract for the service to other than the lowest bidder," this merely authorizes District to exclude lower, nonresponsible bidders. In this case, ERS claims it was the lowest responsible bidder and therefore was entitled to the contract.[4]

We conclude that District and Embree have correctly interpreted the meaning of section 16802. ■ We begin our analysis by recognizing that contracts for transportation of school children are basically "service" contracts. The Legislature has noted the difference by not including them in the portion of the code that pertains to the traditional lump sum general construction contract or public works contract. Section 15951, relied upon by ERS, deals with these latter contracts and is found in part 3, division 12 under the heading "Control of School Property." Section

---

[4]ERS further summarizes pre-bid activities of the parties as well as post-bid activities. At one of Board's meetings in April of 1975, members of Board's staff supported statements made in praise of ERS. The staff concluded that ERS had, in the past, provided satisfactory service. As discussed *infra,* it is not clear that ERS, in spite of the trial court's findings, was the lowest responsible bidder. However, to emphasize that this issue is uncontrolling here, we will assume that ERS qualified as such bidder.

16802 is found in division 13 under the heading "Supplementary Services" in chapter 1 under the heading of "Transportation." This section is concerned with a designated type of contract that deals primarily with service through use of specialized equipment. This distinction is important in that it focuses on the reason for excluding the "lowest responsible bidder" concept in school busing contracts. Construction and procurement contracts are concerned primarily with acquisition of buildings and materials that are closely controlled by plans and specifications. Service contracts contain more intangibles with emphasis on continuing personal performance.

A review of the legislative history of the section supports our conclusion. The codified law first made its appearance as Political Code section 1610 in 1917. It was amended in 1921 and again in 1927. In 1927 the section, after authorizing superintendents of schools to provide for transportation of pupils, said: ". . . provided, that in order to secure such service at the lowest possible figure consistent with *proper and satisfactory service,* board of education and boards of school trustees shall secure bids for the items of service contemplated in this subdivision; and provided, further . . . (approval of county superintendent of schools required). . . ." (Italics added.)

The emphasized portion of the 1927 code section is very similar to the present code—just a difference of one word where "secure" was changed to "procure."

This 1927 version was not satisfactory to the Legislature so the law was again amended in 1929 and made a part of the School Code as section 1.70.

Again after a preamble similar to the 1927 preamble, the law in 1929 read as follows: ". . . or to contract with and pay responsible private parties for such transportation; provided, however, that in order to procure such service at the lowest possible figure consistent with *proper and satisfactory service,* such governing board shall secure bids whenever it be contemplated that a contract may be made with a person or corporation other than a common carrier *but may, in their discretion, let the contract for such service to other than the lowest bidder. . . .*(provision re county superintendent of schools) . . . ." (Italics added.)

The provision re "lowest possible figure consistent with proper and satisfactory service" thus remains in the 1929 version, but added were the words ". . . but may in their discretion let the contract for such service to other than the lowest bidder." We believe, by adding these words, the Legislature made it clear that the District had the right to use judgment and discretion in awarding the contract and was not bound by the lowest bidder provided it first determined that the prevailing bidder could supply the better service under the enunciated standard.[5]

ERS would disagree with the above analysis, claiming it overlooks the 1941 amendment that required Board to secure bids pursuant to sections 15951 and 15952 (then Sch. Code, §§ 6.30 and 6.31). As stated earlier, ERS argues that reference to these sections incorporated section 15951's requirement of "lowest responsible bidder." We disagree. The pertinent wording is: "In order to procure the service at the lowest possible figure consistent with proper and satisfactory service, the governing board shall, . . . *secure bids* pursuant to Sections 15951 and 15952 . . . ." (Italics added.) Section 15952 establishes the procedure for obtaining bids and the above language merely directs Board to follow the procedure in securing bids, not how the contract will be awarded. The two sections were packaged together by the Legislature in section 16802 to give continuity to the reference. ■ Section 15951 refers to general construction contracts and to contracts for materials or supplies, and the reference in section 16802 to section 15951 contains no language that would add or include busing contracts to the "lowest responsible bidder" rule. The most ERS can argue is that incorporation is implied, and under accepted rules of statutory construction this is insufficient. ■ Apropos is the court's statement in *Pac. Gas & E. Co.* v. *Shasta Dam etc. Dist.,* 135 Cal.App.2d 463, 468 [287 P.2d 841]: "Much has been written in many decisions upon the somewhat nebulous subject of legislative intent, and while in bygone years, before the Legislature had the advice and assistance of a highly trained and very efficient Legislative Counsel Bureau, it may have been necessary for courts to read something into statutes which was not specifically expressed therein in order to carry into effect the obvious intent of the Legislature, we believe that *the better and more modern rule of construction is to construe a legislative enactment in accordance with the ordinary meaning of the language used and to assume that the Legislature knew what it was saying and meant what it said.*" (Italics added.)

---

[5]There have been numerous changes in the section since 1929, but the two phrases referenced have continued to be part of the section for over 40 years.

It is an important fact that the Legislature was fully aware of the "lowest responsible bidder" standard in section 15951 but chose not to use it for school bus transportation contracts. It would have been logical and easy for the Legislature to have changed to this standard had it so intended. Instead, for decades it has retained the phrase of "proper and satisfactory service."

■ ERS, in substance, argues that our interpretation nullifies the concept of public bidding and opens the door for an arbitrary award by District that could misapply public funds. The dissent states that it authorizes District to accept a higher bid for the same services and comparable acceptability. Both statements are incorrect. As previously mentioned, the section clearly defines the standard under which a District must act. It cannot act arbitrarily. The criterion used by a District in awarding a contract, if challenged, is a question of fact that can be determined from the record, and a court can void the contract if the above standard is not followed. Unfortunately, in this case the trial court apparently did not consider there was any such brake on District's action. The court's finding No. 12 (see fn. 1, *ante*) simply states that ERS was the low responsible bidder on the basis of a 91-bus bid[6] and the contract was awarded to Embree because section 16802 permits an award to other than the lowest bidder. In other words, the court found it unnecessary to determine if District considered the many factors that would (or would not) establish that Embree was awarded the contract because it could furnish the services at the lowest possible figure consistent with proper and satisfactory service. In this respect the court erred. The record is replete with facts for the court to consider in connection with this requirement. Briefly, some of them are as follows: at three open public meetings the Board carefully considered multiple factors and alternatives in connection with the two bids.[7] Actually, only 71 buses were involved because Board exercised its 20-bus option with Embree at a lower cost than ERS's bid for a like number of buses. The exercise of this option reduced the required number of buses to 71; therefore, the $90,000 spread in the bids (which was based on 91 buses)

---

[6]As explained *infra*, this portion of the finding is not germane because the bidding was reduced to cover only 71 buses.

[7]At the April 22, 1975, meeting a Board member asked what were some of the factors to consider. A member of the staff answered: "As far as the staff is concerned Mr. Marcheschi, the first consideration is to give it to a firm that can do the job. Second consideration is to give it to a firm that can do the job for the least amount of money. *Now, there are other considerations that Board members have mentioned and they're legitimate, . . .*" (Italics added.)

mentioned by the dissent is incorrect.[8] There was also evidence that Embree was planning on using larger buses to effectuate cost savings in its operations that would be passed on to the District. This and other factors make it very difficult to determine the actual cost difference between the two contracts. For example, at the April 29 meeting a Board member stated: ". . . the $90,000 we are talking about applies only if we indeed utilize the full 91 buses. Now that difference decreases quite markedly as we cut down the number of buses, which we certainly have every hope of doing. . . . I have done a little bit of mathematical calculation, if we cut that down to 71 buses instead of 91 buses total, and still not utilize any of the extra seats on the 85 passenger buses, the two contracts would just about break even. . . . As it gets below that 71, then the price gets even that much more attractive, because the Associated price goes up quite markedly as the number of buses goes down, whereas the Embree one does not. . . ."

For the reasons stated above, this matter must be referred back to the trial court in order that it may consider and determine if Board acted in accordance with the standard required by section 16802.

■ 2. ERS next contends that District's "proposal" required it to award the contract to ERS based on the provision stating: "Subject to the District's right to reject any or all bids and to waive any informality (See page B-13), a contract or contracts will be awarded to the contractor whose sum of the daily rate and one-half hour of excess time is low for each size bus . . ." ERS again argues it was the lowest bidder for 91 buses at the above rate, and that District, in not awarding it the contract, illegally modified the bid. The trial court rejected this argument and specifically found (in finding No. 10): "The terms of the Invitation for Bids were not modified in any manner by the Board of Education in its award to defendant Embree or in the contract prepared pursuant to said award." The record supports this finding. Our opinion earlier has explained why a degree of flexibility is allowed in busing contracts. The invitation to bid must therefore be worded in a manner that does not restrict District to a narrower position than is permitted by section 16802. District's "proposal" carefully preserved its alternatives and further

[8]At the April 14 meeting, a Board member asked: "Is the Embree bid lower than the Associated [ERS] bid for 20 buses . . . ?"
ANSWER: "The 20 buses in the existing contract with Embree for the coming year would cost us $91.87 daily. A similar set of 20 buses with Associated would cost us approximately $97.00."

provided: "The District reserves the right to require Contractor to supply whatever buses are required, up to number of buses under contract, and to reduce at District discretion the number of buses required. . . ." The Board's minutes clearly reflect that the members were utilizing this reservation so that they could alter and tailor the District's busing needs as warranted by changing conditions. Cases cited by ERS on this issue, namely, *Swinerton & Walberg Co.* v. *City of Inglewood—L.A. County Civic Center Authority*, 40 Cal.App.3d 98 [114 Cal.Rptr. 834], and *City of Inglewood—L.A. County Civic Center Auth.* v. *Superior Court, supra,* 7 Cal.3d 861, are clearly distinguishable.

3. ERS claims District's action has denied it equal protection of the law. The argument seems to be that because District has the discretion to award the busing contract to other than the lowest responsible bidder, this is an invidious discrimination against such a bidder. The argument is fallacious. Service-type contracts are unique and are treated differently by the courts. All bidders are vying to demonstrate that they can perform the busing contract at the lowest possible figure consistent with proper and satisfactory service. All that is required by the Constitution, federal and state, is that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.[9] If District awarded the contract pursuant to the standard required in section 16802, the nonsuccessful bidders do not suddenly become a class of citizens that have been discriminated against within the meaning of the Constitution.

4. ERS's final argument is that due process requires that the lowest monetary bidder be given a hearing before a contract is awarded to another. ERS cites a statement by the court in *City of Inglewood, supra,* for this proposition, where on page 871 the court said: "We hold that prior to awarding a public works contract to other than the lowest bidder, a public body must notify the low monetary bidder of any evidence reflecting upon his responsibility received from others or adduced as a result of independent investigation, afford him an opportunity to rebut such adverse evidence, and permit him to present evidence that he is qualified to perform the contract."

---

[9]California Constitution, article I, section 11 requires that: "All laws of a general nature shall have a uniform operation." Section 21 provides: "No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the Legislature; nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens."

This rule, however, only permits a low monetary bidder to offer evidence to rebut adverse evidence that might have led the awarding party to believe he was not a "responsible bidder." We do not have such a situation here. The trial court properly found (finding No. 11): "The bids of plaintiff and Brock Bus Lines were not rejected by the Board of Education because of failure to comply with the Invitation for Bids or because they were determined to be non-responsible by the Board." In the cases cited by ERS, the court was dealing with the type of contract that required an award to the lowest responsible bidder. ERS was considered "responsible;" thus, a further hearing was not required.

The judgment denying ERS's petition for writ of mandate is reversed and the matter is remanded to the superior court for further determination consistent with this opinion.

Kaus, P. J., concurred.

**STEPHENS, J.**—Concurring and Dissenting.—The pertinent facts are quite simple. ERS[1] and Embree are both bus transportation contractors. Each of them bid on District's proposed school bus contract covering the period of July 1, 1975, to June 30, 1980. The sole criterion stated in the request for bids was that the contract would "be awarded to the contractor whose sum of the daily rate and one-half hour of excess time is low for each size bus."[2] Analysis of the bids established that ERS was the low bidder by roughly $90,000 per year. It is clearly established that both ERS and Embree are responsible bidders with satisfactory prior service performances with District.[3] The contract, however, was awarded to Embree.

The issue may also be simply stated: Does the District have discretion to award such a contract to other than the *lowest responsible* bidder?

[1]The same "short-titles" are used herein as those used in the majority opinion.

[2]District specified the criterion on the basis of which the contract would be awarded as follows: "Subject to the District's right to reject any or all bids and to waive any informality (See Page B 13), a contract or contracts will be awarded to the contractor whose sum of the daily rate and one-half hour of excess time is low for each size bus. If not enough buses are available at the low bid, the next higher bid shall be considered until enough buses are contracted for. A bidder may bid on one bus or as many as he has available for all capacity buses."

[3]The existent three contracts for school busing and their renewal options should play no part in the consideration of the basic contract proposals before us.

*Analysis*

The request for bids was pursuant to Education Code section 16802: "In order to procure the service at the lowest possible figure consistent with proper and satisfactory service, the governing board shall, whenever an expenditure of more than five thousand dollars ($5,000) is involved, secure bids pursuant to Sections 15951 and 15952 whenever it be contemplated that a contract may be made with a person or corporation other than a common carrier or a municipally owned transit system or a person or guardian of the pupils to be transported. The governing board may let the contract for the service to other than the lowest bidder. No board shall make any purchase or enter into any contract for the service without securing the written approval of the county superintendent of schools."

In approaching an understanding of the purpose and meaning of requiring bidding in cases such as that before us, the magnitude of school busing must be kept in mind. While school busing was not an extraordinary fact in past years, it now takes on magnified importance due to school integration programs. The daily papers keep us all informed of the numerous buses which are necessarily in service and the tax collector notifies us as to the magnitude of the service, dollar-wise.

With these factors in mind, Embree and the District would have section 16802 read in such manner as to authorize the District to accept a higher bid for the same services and comparable acceptability. There is no rationale reasoning to such statutory construction. As stated in *Swinerton & Walberg Co.* v. *City of Inglewood—L.A. County Civic Center Authority,* 40 Cal.App.3d 98, 104 [114 Cal.Rptr. 834]: "To hold that Argo was not entitled to rely upon this promise [to award the contract to the lowest responsible bidder] because of the just mentioned reservation of the right to reject any and all bids would make the Authority's promise an illusory one and render the whole competitive bidding process nugatory." The public has both an economic and moral interest in public service contracts being awarded to the lowest responsible bidder.[4]

---

[4] The term "lowest responsible bidder" connotes reference to the " . . . quality, fitness, and capacity of the low bidder to satisfactorily perform the proposed work." (*City of Inglewood—Los Angeles County Civic Center Authority* v. *Superior Court,* 7 Cal.3d 861, 867 [103 Cal.Rptr. 689, 500 P.2d 601].)

.This determination harmonizes the provisions of sections 16802, 15951 and 15952. The opening sentence of section 16802 states the purpose of calling for bids; the first sentence of section 15951 mandates the letting of the contract to "lowest responsible bidder" and section 15952 provides the manner in which the bids shall be called. That portion of section 16802 seized upon by Embree, i.e., "The governing board may let the contract for the service to other than the lowest bidder," merely recognizes the distinction between the *lowest bidder* and the *lowest responsible* bidder. It places bidders on notice that *proper and satisfactory service* is at least of equal importance as the cost of such service.[5]

The resolution of the question may be simply determined: The public is protected to the tune of some $90,000 per year by the reasonable construction of the legislative mandate. There is *no* justification in this case for permitting that kind of added cost to be imposed upon the citizens of Pasadena. The judgment should be reversed but not for the reasons set forth in the majority opinion.

A petition for a rehearing was denied February 1, 1977. Stephens, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied March 17, 1977.

---

[5]The language in section 15951 granting the board authority to reject *all* bids (not *any* or *all*) recognizes that *all* of the bids may be unreasonable in amount or not from responsible bidders. If, however, any of the bids is both reasonable in amount and from a responsible bidder an exercise in futility in asking for bids when *no* bid is to be accepted, is unreasonable. (See *Swinerton, supra.*)