[Civ. No. 12434. Fourth Dist., Div. Two. Oct. 9, 1973.]

JOHN L. SMITH et al., Plaintiffs and Appellants, v.
CITY OF RIVERSIDE et al., Defendants and Respondents.

## Counsel

Richman & Garrett, Lionel Richman, Walter C. Appling and Ivan J. Potts for Plaintiffs and Appellants.

John Woodhead, City Attorney, Barbara R. Purvis, Deputy City Attorney, and M. Neal Singer for Defendants and Respondents.

**OPINION**

**TAMURA, J.**—The City of Riverside is a charter city which operates its own water and electrical utility systems. Pursuant to a charter provision permitting the city council to except projects for the extension or development of city-operated public utilities from a general charter requirement of public bidding,[1] the city council elected to use city employees rather than private contractors to effect construction and installation of certain types of city electrical and water facilities.[2] This is an action for declaratory relief and injunction challenging the validity of the city's action on the principal ground it constitutes a violation of Government Code section 37901 et seq. requiring work on a "public project" to be contracted for

[1]Section 1110 of the Riverside City Charter provides in relevant part: "Every project for the construction or improvement of public buildings, works, streets, drains, sewers, utilities, parks or playgrounds, and every purchase of supplies or materials for any such project, when the total expenditures required for the same exceed the sum of two thousand dollars, shall be let by the city council by contract to the lowest responsible bidder after notice by publication in a newspaper of general circulation within the city. . . . [¶] Projects for the extension or development of any public utility operated by the city or for the purchase of supplies or equipment for any such utility may be excepted from the requirements of this section, provided the city council so determines by at least five affirmative votes."

[2]The character of the water and electric facilities constructed and installed by city employees is best elucidated by Resolution No. 11396 of the Riverside City Council, dated November 25, 1969 and incorporated by reference into the stipulation of facts, wherein the council reaffirmed the exception of the following types of utility projects from the requirements of section 1110 of the city charter:

"*Electric Division*: (1) The extension and development including construction, replacement and relocation of overhead and underground communication and control circuits and electrical distribution and transmission facilities up to the 'line side' of the customer's meter. (2) The installation and construction of electrical substations and additions to existing substations. (3) The installation of mast arm street lights on utility wood poles and replacement of existing luminaires and street light standards. *Water Division*: (1) The extension and development including construction, replacement and relocation of the distribution system, consisting of all water mains 12 inches in diameter and smaller, together with appurtenances including fire hydrants, valves, fittings, service laterals and meters. (2) The connecting into the water system of projects constructed by contract, such as reservoirs, transmission mains, pumping plants, wells, and water treatment facilities. (3) Minor projects for the construction, replacement or relocation of tanks, water treatment facilities, pumps, power supply lines, fuel supply lines, signal systems, water lines, and buildings where the total project expenditure is estimated to be less than $5,000. (4) Any project required to restore or maintain water service under emergency conditions."

and let to the lowest responsible bidder when the expenditure exceeds $3,500.[3]

Plaintiff Smith brought the action as a city taxpayer and as an officer and member of Laborers' International Union of North America, Local No. 1184. The complaint alleges the city constructed water mains and laterals into and within a private shopping center and into and within a private subdivision without complying with Government Code section 37901 et seq.; unless restrained and enjoined, the city will continue to perform such projects without complying with the Government Code sections; the city's conduct not only constitutes an illegal expenditure of public funds, but deprives members of plaintiff union of work opportunities they otherwise would have if the city let such projects to private contractors pursuant to public bid in accordance with the Government Code. Plaintiffs prayed for a judicial declaration that the City of Riverside is subject to Government Code section 37901 et seq. and for a decree enjoining it from performing any "public project" as defined in Government Code section 37901 without complying with sections 37902 et seq.

Following answer by the city, the parties filed a joint pretrial statement in which it was stipulated the matter would be submitted on an agreed statement of facts and that the issues in dispute were: (1) Whether the extension or development of city water mains and electric lines is a "public project" as defined in Government Code section 37901; (2) if it is a "public project" as defined in section 37901, whether the provisions of Government Code section 37902 et seq. are applicable; and (3) whether or not the city should be permanently enjoined from extending or developing its public utilities facilities by city forces when the cost of such projects exceeds $3,500 despite compliance with its charter provisions.

The written stipulation of facts on which the cause was submitted included the following:

Pursuant to a city charter provision, the city council adopted a resolution (fn. 2, *ante*) continuing in force its past policy of performing work for the extension of certain types of electrical and water facilities by city

---

[3]The pertinent Government Code sections read as follows: Section 37901: "As used in this chapter, 'public project' means: (a) A project for the erection, improvement, and repair of public buildings and works. (b) Work in or about streams, bays, water fronts, embankments, or other work for protection against overflow. (c) Street or sewer work except maintenance or repair. (d) Furnishing supplies or materials for any such project, including maintenance or repair of streets or sewers." Section 37902: "When the expenditure required for a public project exceeds three thousand five hundred dollars ($3,500), it shall be contracted for and let to the lowest responsible bidder after notice."

work force rather than by contract. The projects performed by city employees are within public streets and easements dedicated to the city.

With respect to electrical facilities, on major projects the structural work is generally contracted but the cabling, especially underground work, is performed by city employees having specialized technical knowledge because general and electrical contractors normally lack the required expertise and because the work must be coordinated with existing city in-service systems.

The city council has authorized use of city forces to install water mains 12 inches in diameter and smaller in street rights of ways in new subdivisions unless the developer elects to have the work performed by a private contractor. Where the developer elects to have the city do the work, the developer is required to advance sufficient sums in the form of "development fees" to cover the cost of labor and materials. City work forces are used to install water mains in existing streets where the mains are 12 inches and smaller but larger mains are installed by contract.

There is no evidence that the city or its officers have "unreasonably or wrongfully abused" the charter provisions empowering the city council to except from the charter bidding requirement work involving extension of city-operated public utilities facilities. If the city were precluded from using city work forces for extensions of city public utilities facilities in all instances where costs exceed $3,500, approximately 63 city positions would be eliminated. One of the reasons for maintaining the City Public Utilities Department work force is to enable the city to maintain and restore service in emergencies as well as to construct facilities when needed.

The electricity distributed by the city is purchased from Southern California Edison Company and originates from Hoover Dam and generating plants in Los Angeles, San Bernardino, and Orange Counties. Some of the water distributed by the city comes from the Colorado River and in the future some will be Feather River water.

The trial judge concluded that projects for the extension of city water mains and electric lines are not "public projects" within the meaning of Government Code section 37901; even if such works are construed to be "public projects" as defined by Government Code section 37901, the city need not comply with the competitive bidding requirements of Government Code section 37902 et seq. in that the manner of performing work for the extension or development of city-owned public utilities is a "municipal affair"; since the city charter provides a complete scheme for con-

structing utility projects and improvements, Government Code section 37901 et seq., to the extent they are inconsistent with the charter, are inoperative; and the city's action as set forth in the stipulation is not "ultra vires." Judgment was rendered for defendant city.

Plaintiffs appeal from the judgment and urge principally that construction of utilities facilities is governed by state statute rather than city charter and that under the Government Code when the work involves an expenditude of more than $3,500, it must be let to the lowest responsible bidder after notice. Defendants' response is twofold. They urge: (1) The construction activities in question are not "public projects" within the meaning of Government Code section 37901 and (2) even if they be so construed, the manner of performing such work is a municipal affair and is, therefore, governed exclusively by the city charter. For reasons which follow, we have concluded that the construction of city water and electrical facilities is a municipal affair. We, therefore, need not decide whether such projects come within the meaning of "public projects" as defined by Government Code section 37901.

 A charter city may make and enforce all ordinances and regulations with respect to its municipal affairs, subject only to restrictions and limitations contained in its charter, but with respect to other matters, such as those of statewide concern, it is bound by general laws if it is the intent and purpose of such general laws to occupy the field to the exclusion of municipal regulation.[4] (*Bishop* v. *City of San Jose,* 1 Cal.3d 56, 61-62 [81 Cal.Rptr. 465, 460 P.2d 137]; *Pac. Tel. & Tel. Co.* v. *City & County of S. F.,* 51 Cal.2d 766, 768-769 [336 P.2d 514]; *Pipoly* v. *Benson,* 20 Cal.2d 366, 369-370 [125 P.2d 482, 147 A.L.R. 515].) Whether a subject matter under discussion is of municipal or statewide concern must be judicially determined but no precise definition of the term "municipal affair" has been formulated by the courts. (*Bishop* v. *City of San Jose, supra,* 1 Cal.3d 56, 62.) The approach has been largely ad hoc. (Sato, *"Municipal Affairs" in California* (1972) 60 Cal.L.Rev. 1055, 1075-1076.)

While the precise question whether a charter city is subject to a general statute requiring projects for the construction of public improvements to be contracted out on competitive bidding has never been squarely decided,

---

[4]Section 5 of article 11 of the California Constitution provides in pertinent part: "(a) It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith."

it has been held in analogous situations that the mode of contracting for city improvements is a municipal affair. Thus, a statutory requirement for a labor and materials bond for state, municipal or other public works has been held inapplicable to a city whose charter provides a complete scheme for the letting of such contracts and the terms and conditions thereof. (*Loop Lumber Co.* v. *Van Loben Sels.,* 173 Cal. 228, 232-234 [159 P. 600]; *Williams* v. *City of Vallejo,* 36 Cal.App. 133, 139-140 [171 P. 834].) In reaching its conclusion, the court in *Loop Lumber Co., supra,* declared: ". . . That street and sewer work in a municipality, and the making of contracts therefor on the part of the municipality are 'municipal affairs' within the meaning of the constitutional provision cannot be doubted. [Citations.] Especially is this true where the expense of the work is to be borne by the municipality itself, as was the fact in this case. And we do not think it can be seriously questioned that a municipality may provide in its freeholders' charter for a complete scheme for the doing of such work that will be paramount to anything contained in any act of the state legislature, and that in regard to such municipality anything contained in any general law of the state that is inconsistent with the charter provisions must be inoperative." (*Loop Lumber Co.* v. *Van Loben Sels., supra,* 173 Cal. 228, 232.)

In *City of Pasadena* v. *Charleville,* 215 Cal. 384 [10 P.2d 745], the court held that a state statute requiring contractors on public projects to pay the general prevailing wages did not apply to a contract awarded by a chartered city but that a statute prohibiting employment of aliens for such work did apply. Although the latter holding has since been disapproved on grounds the statute encroached upon the power of Congress to regulate immigration and naturalization and offended the equal protection clause (*Purdy & Fitzpatrick* v. *State of California,* 71 Cal.2d 566 [79 Cal. Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194]), the holding with respect to the prevailing wage statute has not been overruled. (See Sato, *op. cit. supra,* p. 1091.) While *Franklin* v. *City of Riverside,* 58 Cal.2d 114 [23 Cal. Rptr. 401, 373 P.2d 465], may be read as a hint that *Charleville* should be reexamined, the case was decided on the narrow ground that the type of work involved was "maintenance work" and hence came within the express exclusion of the prevailing wage statute.

Professor Sato's comprehensive and penetrating article, *"Municipal Affairs" in California, supra,* 60 Cal.L.Rev. 1055, suggests several criteria for determining what matters should constitute municipal affairs. He suggests: "Matters of intracorporate structure and process designed to make an institution function effectively, responsively, and responsibly should generally be deemed a municipal affair" and on the matter of competitive

bidding concludes: "[S]ince there is nether a pervasive state policy regarding what contracts must be let by competitive bidding nor a substantial externality with respect to local decision on this matter, it would seem that this is a municipal affair." (60 Cal.L.Rev. 1055, 1077, 1094; italics omitted.) In California it has been declared settled that unless the law or charter under which a city is organized so requires, a municipality may purchase supplies and hire labor without advertising for bids. (*Davis* v. *City of Santa Ana,* 108 Cal.App.2d 669, 677 [239 P.2d 656]; *Swanton* v. *Corby,* 38 Cal.App.2d 227, 229 [100 P.2d 1077]. See *Perry* v. *City of Los Angeles,* 157 Cal. 146 [106 P. 410].) ■ We are, of course, cognizant of the salutatory principle that what may at one time have been deemed a matter of local concern may later become of statewide concern and hence controlled by general laws of the state. (*Pac. Tel. & Tel. Co.* v. *City & County of S.F., supra,* 51 Cal.2d 766, 771.) ■ However, the facts stipulated by the parties fail to disclose any facts or circumstances indicating that a city's choice of the method of doing the type of work here involved has a statewide impact. Plaintiffs' contention that distribution of electricity and water are matters of statewide concern misses the mark. The municipal activity at issue is not the distribution of electricity and water but the mode chosen to build and extend the distribution facilities. ". . . Whatever the subject matter of a municipal contract, it is manifest that the mode in which a city chooses to contract is a municipal affair, . . ." (*Dynamic Ind. Co.* v. *City of Long Beach,* 159 Cal.App.2d 294, 299 [323 P.2d 768].) In *Pac. Tel. & Tel. Co.* v. *City & County of S. F., supra,* 51 Cal.2d 766, upon which plaintiffs rely, the sole question was whether the city could prevent a telephone company from constructing and maintaining its lines in city streets without a city franchise. The city activity at issue concerned its attempt to regulate the business of providing telephone service to inhabitants of the city. The subject of concern in the instant case is *not* the regulation of the business of distributing water or electricity.

*Professional Fire Fighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276 [32 Cal.Rptr. 830, 384 P.2d 158], cited by plaintiffs, is clearly distinguishable. It held that Labor Code sections 1960 through 1963 giving firefighters the right to organize or join labor organizations applied to charter cities. Labor relations were held to be of the same statewide concern as workmen's compensation, liability of manufacturers for tort, and perfecting and filing of claims, all of which have been held to be governed by general law. The case at bench does not involve the subject matter of employer-employee relationships.

We conclude that the decision whether work for the extension or development of city public utilities facilities shall be done by contract on competitive bidding or by city forces in a municipal affair.

Plaintiffs contend the legislative history of Government Code section 37900 et seq. discloses an intent to make the bidding requirements of section 37902 applicable to charter cities. Former section 37900 provided: "This article applies to fifth and sixth class cities," the article referred to being the general article under the chapter on "Contracts" in division 3, title 4 of the Government Code relating to city governments. It is urged that by repealing section 37900, the Legislature intended to make the bidding requirements of the ensuing sections applicable to all cities, including charter cities. The contention lacks merit. In 1955 the Legislature enacted a comprehensive statute abolishing the distinction between various classes of general law cities based upon population, providing for but one class of cities organized under general laws to be known as "general law cities," and amending and repealing various sections of the codes referring to classes of general law cities. (Stats. 1955, ch. 624, p. 1114.) Government Code section 37900 was one of the sections repealed by the act. (Stats. 1955, ch. 624, p. 1120.) It is thus apparent that section 37900 was repealed simply to bring all code sections into conformity with the reclassification of general law cities and not to make the ensuing sections (37901 et seq.), theretofore applicable only to fifth and sixth class cities, applicable to chartered cities. In other instances where the Legislature intended general state law to be applicable to charter cities, it has done so by expressly so providing.[5] (See e.g., Elec. Code, § 14902; Health & Saf. Code, § 33204; Gov. Code, § 54951.) A further persuasive indication that the Legislature did not intend Government Code section 37901 et seq. to apply to charter cities is the fact that the city charters of Bakersfield, Newport Beach, Oakland, Porterville and Burbank, among others, contain provisions similar to the Riverside Charter empowering the city council to perform with city employees construction work which, under the Government Code, would be required to be let to contract upon competi-

---

[5]Since the repeal of section 37900, at least one bill has been introduced in the Legislature seeking to make the competitive bidding requirements of the Government Code applicable to charter cities. (A.B. 991, 1970 Leg. Sess.)

It is unnecessary to decide whether a legislative attempt to make Government Code section 37901 et seq. applicable to charter cities would be valid. While courts will give great weight to the purpose sought to be achieved by the Legislature in enacting a law which reveals an intention to preempt the field, the ultimate decision as to what is a municipal affair is one which rests with the courts. "[T]he Legislature is empowered neither to determine what constitutes a municipal affair nor to change such an affair into a matter of statewide concern." (*Bishop* v. *City of San Jose, supra,* 1 Cal.3d 56, 63; fn. omitted.)

tive bids and the fact that those provisions are contained in charter amendments approved by the Legislature after 1955, the year in which Government Code section 37900 was repealed.[6]

We need not consider plaintiffs' additional claim that the city has entered the construction industry as an entrepreneur rather than in the discharge of a proper governmental function and is, therefore, acting ultra vires. In the stipulation of facts, the parties have expressly agreed that "[t]here is no indication that defendant City of Riverside or any of its officers or employees have unreasonably or wrongfully abused" the city charter's provision permitting construction of certain improvements without contracting the work to the lowest responsible bidder.

Judgment affirmed.

Kerrigan, Acting P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied October 26, 1973, and appellants' petition for a hearing by the Supreme Court was denied December 5, 1973.

---

[6]This information was derived from the exhibits to the written stipulation of facts entered into by the parties.

City charters must be approved by the Legislature. (Cal. Const., art. XI, § 3, subd. (a).)