[Civ. No. 36284. First Dist., Div. Three. Feb. 27, 1976.]

PATRICK L. KILLEEN, Plaintiff and Appellant, v.
CITY OF SAN BRUNO et al., Defendants and Respondents.

COUNSEL

Albert E. Polonsky for Plaintiff and Appellant.

Joseph A. Galligan, City Attorney, for Defendants and Respondents.

OPINION

BROWN (H. C.), J.—Plaintiff, as a representative of a class, filed this taxpayer's suit against defendants, City of San Bruno, city council members, the city's finance director and the city engineer (city) to enjoin the use of city employees to perform work, in violation of section 37902 of the Government Code, which provides: "When the expenditure

required for a public project exceeds three thousand five hundred dollars ($3,500), it shall be contracted for and let to the lowest responsible bidder after notice." The lower court, after a hearing, denied the taxpayer's motion for a preliminary injunction, and this appeal ensued.

, As the appeal is from an order denying a preliminary injunction, the facts are derived from the pleadings and supporting memoranda. During the summer of 1974, San Bruno, a general law city, began replacing at least 70 service lines connecting certain businesses to a new water main, at a total cost in excess of $3,500. To perform this work, the city chose to use only its own employees; no contracts were let for any of the work done. The parties here stipulated that these water main connections were a "public project" within the meaning of that term in section 37902 of the Government Code.[1]

In *Matthews* v. *Town of Livermore* (1909) 156 Cal. 294 [104 P. 303], the court was confronted with similar facts, as the plaintiff sought to enjoin the use of city employees to construct a system of sewers for the town. In construing section 862 of the act of 1883 (Stats. 1883, ch. 49, p. 93), authorizing a city to construct a sewer, and section 874 of the same act, the predecessor of the instant statute (Stats. 1883, ch. 49, p. 274, codified in Gov. Code, §§ 37901-37902), requiring competitive bidding, the court stated at page 296: ". . . it cannot be denied that the general power to construct sewers given by section 862 is limited and modified, with regard to sewers costing more than one hundred dollars, by the specific provisions of section 874 requiring public works of that magnitude to be done by contractors upon contract let to them after due advertisement and an opportunity for competing bids. *Unless there is some other or later statute enlarging their powers, or modifying these provisions, the board of trustees were attempting to exceed their powers and their action should have been enjoined. . . .*" (Italics added.)

---

[1]Section 37902 of the Government Code applies only to expenditures for "public projects," as defined by section 37901. In pertinent part, section 37901 provides that "public project" means "[a] project for the erection, improvement, and repair of public buildings and works." Section 25540.5 of the Government Code, applicable to counties, states specifically that a water system is not a public work for purposes of the bidding statute applicable there. Similarly, section 40401 of the Government Code, that details the public works projects for which a city has the authority to make expenditures, does not include a water supply system. Rather, section 10001 of the Public Utilities Code defines a system for supplying water as a public utility. In *Smith* v. *City of Riverside* (1973) 34 Cal.App.3d 529, 534 [110 Cal.Rptr. 67], the court expressly declined to decide whether an almost identical project, involving the extension of water mains and laterals into a private shopping center, came within the meaning of a "public project," as defined by section 37901. This issue is not before us.

■ A similar result has been reached by our Supreme Court and appellate courts in construing city charters that contain similar or identical provisions mandating contracts let by competitive bidding for public projects for which the total anticipated expenditure exceeds the specified threshold level. (*Foxen* v. *City of Santa Barbara* (1913) 166 Cal. 77, 81 [134 P. 1142]; see *Perry* v. *City of Los Angeles* (1909) 157 Cal. 146, 148-149 [106 P. 410].) In the case before us, defendants have failed to deny the allegations of the complaint that 'the entire project is one project and has been handled as one project by the public works department' and that 'the overall cost of said project is a sum in excess of $3,500.' We therefore conclude that the city acted in excess of its authority in permitting the installation of connecting services to be done by its employees without compliance with section 37902 of the Government Code.

■ The city argues that section 37902 of the Government Code does not apply to the city's use of its own employees because no contract is involved. The language of the statute, however, does not lend itself to such an interpretation as it states, so far as pertinent, "[w]hen the expenditure . . . exceeds . . . ($3,500), it shall be contracted for . . . ." The statutory requirement is based on an expenditure exceeding the threshold amount, and "shall" is mandatory (Gov. Code, § 14; *Knoff* v. *City etc. of San Francisco* (1969) 1 Cal.App.3d 184, 197 [81 Cal.Rptr. 683]).

The city next contends that the construction of the predecessor of the statute in *Matthews, supra,* is inconsistent with section 37905 of the Government Code, which provides: "After rejecting bids, the legislative body may pass a resolution by a four-fifths vote of its members declaring that the project can be performed more economically by day labor, or the materials or supplies furnished at a lower price in the open market. Upon adoption of the resolution, it may have the project done in the manner stated without further complying with this chapter." The city urges that the absence of any mention of the use of city employees by section 37905 necessarily implies that the statutory scheme of bidding was not meant to apply to projects on which city employees were to be used. ■ However, section 37905 is equally susceptible to the interpretation that it has created only a limited exception to the requirements of section 37902; otherwise, all work on public projects must be contracted for, and cannot be done even by city employees. The reasoning of *Matthews, supra,* and the other cases cited above, support this view. Contrary to the city's interpretation, then, the fact that section

37905 failed to include use of city employees as an exception further supports the view that the city acted in excess of its authority.

■ Finally, the city urges that its use of its own employees is a necessarily implied exception to the competitive bidding requirements of section 37902, in keeping with the purpose of the statute, namely, "to protect the taxpayers from fraud, corruption, and carelessness on the part of public officials and the waste and dissipation of public funds." (*Miller* v. *McKinnon* (1942) 20 Cal.2d 83, 88 [124 P.2d 34, 140 A.L.R. 570].) The city argues that where there is no contract, there can be no possibility of fraud, favoritism or waste of public monies. While competitive bidding statutes provide an objective standard for reviewing the letting of contracts, there is no similar standard by which to review the existence of employee classifications within a city civil service system and the wages and fringe benefits paid to city employees (see Gov. Code, § 36506). Thus, it is within the authority of a city's legislative body to create city positions, set the pay, and thereby achieve what the city would be prevented from doing by contract because of the constraints of the competitive bidding requirement.

Even assuming a need to keep city employees productively occupied at all times in these days of stringent budgets, creation of a judicial exception to section 37902 is improper, and an infringement on the prerogative of the Legislature, which has created the existing exceptions to the competitive bidding requirements (see Gov. Code, §§ 37103, 37904-37907). ■ The city having acted in excess of its authority, the lower court erred in denying the motion for a preliminary injunction.

The order denying the preliminary injunction is reversed.

Draper, P. J., concurred.