[Civ. No. 69027. Second Dist., Div. Four. Jan. 31, 1984.]

PILEDRIVERS' LOCAL UNION NO. 2375, Plaintiff and Appellant, v. CITY OF SANTA MONICA, Defendant and Respondent; CONSTRUCTION INDUSTRY FORCE ACCOUNT COUNCIL, Intervener and Appellant.

COUNSEL

Patrick T. Connor and De Carlo & Connor for Plaintiff and Appellant.

Donald D. Harmata for Intervener and Appellant.

Robert M. Myers, City Attorney, and Martin T. Tachiki, Deputy City Attorney, for Defendant and Respondent.

OPINION

SAETA, J.*—Appellants appeal from denial of their application for a preliminary injunction. They sought to enjoin the work being done by employ-

*Assigned by the Chairperson of the Judicial Council.

ees of the City of Santa Monica (City) on the City-owned Newcomb Pier. Appellants advance two arguments in support of their position: (1) state law required the City to put the work to competitive bidding; and (2) the City's charter requires competitive bidding. The trial court found that the work was a matter of municipal concern and the work was not shown to be new construction so as to require the public bidding procedure. The trial court was correct and we affirm.

Appellants rely on Public Contract Code sections 20161 and 20162. These provisions were formerly found in Government Code sections 37901 and 37902. They provide for work done in "erection, improvement, painting, or repair of public buildings and works" of over $5,000 expenditure to "be contracted for and let to the lowest responsible bidder after notice." It is conceded that work on the pier required an expenditure of well over $5,000. The City counters with the argument that sections 20161 and 20162 do not apply because it is a charter city.

California Constitution, article XI, section 5, subdivision (a), reads as follows: "It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith."

This constitutional provision has been construed several times by the Supreme Court. In the leading case of *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56 [81 Cal.Rptr. 465, 460 P.2d 137], the court explains that home rule charter cities initially have full power to legislate but are subject to state legislation where there is both a conflict in the laws and the state legislation discloses an intent to preempt the field. (*Id.,* at pp. 61-62.) Whether or not the state has preempted the field under inquiry is a matter for the courts to decide. (*Id.,* at p. 62.) Even where the state legislation purports to supersede inconsistent provisions in local charters, that legislative declaration is not controlling on the courts. (*Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 316 [152 Cal.Rptr. 903, 591 P.2d 1].)

The issue of whether these state bidding provisions bind charter cities has been addressed and decided in *Smith* v. *City of Riverside* (1973) 34 Cal.App.3d 529 [110 Cal.Rptr. 67]. The appellate court held that the mode of contracting work in the city was a municipal rather than a statewide

concern and the state bidding procedures did not apply. Appellants have advanced no persuasive reasons for us to depart from the reasoning or holding of *Smith*. No developments in this area of the law in the 10 years since *Smith* are cited to vitiate that ruling. Indeed, the recodification without change of the relevant sections of the Government Code into the Public Contract Code in 1982 (Stats. 1982, ch. 465, § 11) reinforces the *Smith* interpretation. Further, Public Contract Code section 20160 provides that the state bidding procedures apply to noncharter cities.

Appellants argue that "statewide concern" over the City's pier is reflected in tidelands legislation (Stats. 1970, ch. 1077, pp. 1913-1919); coastal conservancy legislation (Pub. Resources Code, § 30000 et seq.); and the California Parklands Act of 1980 (Pub. Resources Code § 5096.141 et seq.). While it may be true that these enactments show an interest in the operation of piers, this interest does not arise to a preemption of nonconflicting local regulation of contract letting. Appellants point to no conflict between the City's work plans and the other cited enactments. The only conflict is between the City's having its employees do the work and Public Contract Code sections 20161 and 20162. It has already been pointed out that *Smith* resolves that conflict in favor of the City. A comparison of the majority and dissenting opinions in *Bishop* v. *City of San Jose, supra,* 1 Cal.3d 56, shows that state interest in the project is not the same thing as state interest in competitive bidding. The *Bishop* dissent says that inquiry ends once a statewide concern is found. (*Id.,* at p. 66.) The majority rejects this reasoning in speaking of conflicts between state and local regulations and whether the "subject matter under discussion is of municipal or statewide concern." (*Id.,* at p. 62; *Alioto's Fish Co.* v. *Human Rights Com. of San Francisco* (1981) 120 Cal.App.3d 594, 603-604 [174 Cal.Rptr. 763].)

■ Appellants' second line of attack is that the City violated its own charter requirement of obtaining competitive bids. City charter section 608 states in part: "Every contract involving an expenditure of more than . . . $5,000.00 . . . for the construction or improvement (*excluding maintenance and repair*) of public buildings, works, streets . . . parks and playgrounds, and each separate purchase of materials or supplies for the same, . . . shall be let to the lowest responsible bidder. . . ." (Italics added.)

City relies on the italicized portion of the section, i.e., its work on the pier was maintenance and repair. Appellants dispute the application of the quoted exception, claiming that the work done was more extensive. Factually, the work was best described by the City engineer as "removing and replacing approximately 20 percent of the 12 inch by 12 inch beams, 90 percent of the 3 inch by 12 inch and 3 inch and 16 inch joists and 100

percent of the 2 inch by 12 inch surface decking of an area representing approximately 15 percent of the total area of the Pier."

Appellants rely on two "paving" cases for a definition of "repairs": *Santa Cruz R.P. Co.* v. *Broderick* (1896) 113 Cal.628, 633 [45 P.863]; and *Holland* v. *Braun* (1956) 139 Cal.App.2d 626 [294 P.2d 51]. In both cases the courts held that paving a previously unpaved street was more than a "repair." More analogous than roads to our facts are bridge cases cited by the City. In *Whalen* v. *Ruiz* (1953) 40 Cal.2d 294, 300-301 [253 P.2d 457], the issue was the duty of a railroad company concerning a bridge. The railroad had the contractual duty to repair the bridge but not to make structural changes to meet changing traffic conditions. ▋ In defining the word "repair," the court states: "The word 'repair' in its ordinary sense relates to the preservation of property in its original condition, and does not carry the connotation that a new thing should be made or a distinct entity created. (76 C.J.S. p. 1169.) As was said in *Realty & Rebuilding Co.* v. *Rea,* 184 Cal. 565, at page 576 [194 P. 1024]: 'To repair means to mend an old thing, not to make a new thing; to restore to a sound state something which has become partially dilapidated, not to create something which has no existence.'" (*Id.,* at p. 300.) *Whalen* cites *Bosqui* v. *City of San Bernardino* (1935) 2 Cal.2d 747, 758 [43 P.2d 547], where the Supreme Court includes in "repair" the duty to maintain weakened parts of an overhead viaduct including the framework, roadway and curbing. Taken together, these two Supreme Court pronouncements show that work on underlying supporting members as well as paving of an existing roadway constitute "repair" in a suitable factual context. Our pier is similar to the structures in *Bosqui* and *Whalen.*

In addition, City cites *People* ex rel. *Dept. Pub. Wks.* v. *Ryan Outdoor Advertising, Inc.* (1974) 39 Cal.App.3d 804, 810 [114 Cal.Rptr. 499], where the court held "maintenance" does not include the moving of a billboard a few feet to accomodate a change in the state's right of way. The court quotes Webster's New World Dictionary of the American Language (2d college ed.) definition of "maintenance" as follows: " 'a maintaining or being maintained; upkeep, support, defense, etc.; [specifically], the work of keeping a building, machinery, etc. in a state of good repair. . . .' The word 'maintain' is defined as 'to keep or keep up; continue in or with; carry on . . . [and] to keep in a certain condition or position, [especially] of efficency, good repair, etc.; preserve (to maintain roads). . . .' "

▋ On the facts presented to the trial court and on our interpretation of the law as applied to those facts (Evid. Code, § 310, subd. (a)), the City

was engaged in repair and maintenance work within the meaning of section 608.

The judgment is affirmed.

Kingsley, Acting P. J., and Amerian, J., concurred.

A petition for a rehearing was denied February 15, 1984, and the petition of intervener and appellant for a hearing by the Supreme Court was denied April 25, 1984.