[No. B007979. Second Dist., Div. Five. Oct. 7, 1985.]

R & A VENDING SERVICES, INC., Plaintiff and Appellant, v. CITY OF LOS ANGELES, Defendant and Respondent.

1190

COUNSEL

Joseph W. Fairfield for Plaintiff and Appellant.

Gary R. Netzer and James K. Hahn, City Attorneys, Thomas C. Bonaventura, Pedro B. Echeverria and John F. Haggerty, Assistant City Attorneys, and Marcia Haber Kamine, Deputy City Attorney, for Defendant and Respondent.

OPINION

ASHBY, J.—R & A Vending Services, Inc. (R & A) appeals from the denial of a petition for a writ of mandate, and an order to place off calendar a demurrer to R & A's request for injunctive and declaratory relief against the City of Los Angeles (City). We affirm the judgment of the trial court as to the writ petition. As will be seen below, the off-calendar order is not appealable.

R & A was one of six bidders responding to City's call for proposals for the operation of five refreshment stands in Griffith Park. The proposals were studied. City's board of recreation and parks commission (Board) recommended the acceptance of a proposal by T. Irwin. The other bidders contested the decision. Board interviewed the bidders and reconsidered. The lease was finally awarded to Jim Pontillo. R & A sued on the ground that it was the highest responsible bidder, promising more rent to City than Mr. Pontillo. R & A relied on sections of the Public Contract Code and the Government Code for its argument that City must award the lease to R & A because City had no discretion in making its decision to award the lease under the pertinent section of the city charter, section 386. Following a hearing on the petition for a writ of mandate, the trial court ruled that the award of the lease was a discretionary act governed by the city charter. A motion for a new trial was denied. This appeal followed.

We begin with R & A's contention that City is bound by Public Contract Code section 20162.[1] The City of Los Angeles is a charter city, not a general law city. The law is settled: these state general law bidding procedures do not bind chartered cities where the subject matter of the bid constitutes a municipal affair.[2] (*Smith* v. *City of Riverside* (1973) 34 Cal.App.3d 529, 534 [110 Cal.Rptr. 67]; see *Piledrivers' Local Union* v. *City of Santa Monica* (1984) 151 Cal.App.3d 509, 511-512 [198 Cal.Rptr. 731].)[3] Because the matter at issue here is a municipal affair, as will be seen below, City is not bound by section 20162.

---

[1] "When the expenditure required for a public project exceeds five thousand dollars ($5,000), it shall be contracted for and let to the lowest responsible bidder after notice." (Pub. Con. Code, § 20162.)

[2] Cities organized under a charter shall be " 'chartered cities.' " (Gov. Code, § 34101.) Los Angeles is organized under a charter.

[3] We agree with R & A's argument that *Piledrivers* is distinguishable. The distinction is that in *Piledrivers*, and in *Smith*, the application of Public Contract Code section 20162 was at least arguable. The type of work contested in both cases could have been considered a "public project" under the state code. It is more difficult to see how a concession lease in Griffith Park could be a public project for purposes of section 20162 in light of the meanings that term is given in section 20161. Given the holdings of *Smith* and *Piledrivers* we need not discuss the issue further.

■ R & A also relies on Government Code sections 50514[4] and 50515.[5] The parties cite and our research reveals no case discussing the application of sections 50514 and 50515 to chartered cities. Many cases discuss and apply the general analysis used to determine the issue of whether a state code or municipal law applies. ■ It is long settled that if a chartered city legislates with regard to municipal affairs the charter prevails over general state law. (*Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 315 [152 Cal.Rptr. 903, 591 P.2d 1].) ■ In matters of statewide concern the city is bound by general laws if it is the intent and purpose of the general laws to occupy the field to the exclusion of municipal regulation. (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61-62 [81 Cal.Rptr. 465, 460 P.2d 137].) ■ The question of whether the matter at issue is of municipal or statewide concern must be judicially determined, but the courts have developed no precise definition of the term "municipal affair." (*Id.,* at p. 62; *Smith* v. *City of Riverside, supra,* 34 Cal.App.3d 529.) A review of the case law dealing with the issue of whether a chartered city is bound by state law, or by municipal ordinances or city charters, shows the following have been deemed matters of municipal concern: charter city employee compensation (*Sonoma County Organization of Public Employees* v. *County of Sonoma, supra,* 23 Cal.3d 296, 317, and see *Bishop* v. *City of San Jose, supra,* 1 Cal.3d 56); licensing fees and occupation taxes (*Weekes* v. *Oakland* (1978) 21 Cal.3d 386 [146 Cal.Rptr. 558, 579 P.2d 449]; *Marsh & McLennan of Cal., Inc.* v. *Los Angeles* (1976) 62 Cal.App.3d 108, 124 [132 Cal.Rptr. 796]); city planning (*Duran* v. *Cassidy* (1972) 28 Cal.App.3d 574, 583 [104 Cal.Rptr. 793]); city-operated public utilities (*Smith* v. *Riverside, supra,* 34 Cal.App.3d 529); and city sewage (*City of Santa Clara* v. *Von Raesfeld* (1970) 3 Cal.3d 239, 246 [90 Cal.Rptr. 8, 474 P.2d 976]). Deciding who will be awarded the contract for refreshment stands in a city park is unquestionably a matter of municipal concern. The determination of how bids on such a contract will be accepted must be controlled by local rather than state legislation. We find that the Los Angeles City Charter provisions control, and that Government Code sections 50514 and 50515 have no application.[6]

---

[4]"The legislative body shall award the lease to the highest responsible bidder." (Gov. Code, § 50514.)

[5]"After the bid has been accepted by the legislative body, it shall enter into a lease with the highest bidder. . . ." (Gov. Code, § 50515.)

[6]The city charter section at issue, section 386, provides a more complete procedure for competitive bidding than the Government Code sections relied upon by appellant. For example, city charter section 386(c) requires that notice of the invitation for proposals be published in a daily newspaper and that the notice specify the amount of the bond that must be posted. The section permits the City to require detailed specifications, and guarantees of performance and other appropriate factors.

██ R & A's main argument appears to be that even under the charter provisions for competitive bidding City was duty bound to accept the "lowest [or highest] and best regular responsible bidder furnishing satisfactory security for its performance" (L. A. City Charter, § 386(f)), and that City has no discretion in making that determination. R & A maintains that because it was the highest responsible bidder City was bound to grant the lease to it. The case law does not support R & A. ██ The term "lowest responsible bidder" in city charters has been held to mean "the lowest bidder whose offer best responds in quality, fitness, and capacity to the particular requirements of the proposed work; and that where by the use of these terms the council has been invested with discretionary power as to which is the lowest responsible bidder . . . such discretion will not be interfered with by the courts in the absence of direct averments and proof of fraud."[7] (*West* v. *Oakland* (1916) 30 Cal.App. 556, 560-561 [159 P. 202], reaffd. in *City of Inglewood-L.A. County Civic Center Auth.* v. *Superior Court* (1972) 7 Cal.3d 861, 867 [103 Cal.Rptr. 689, 500 P.2d 601].)

██ R & A argues that City made no finding that it was not a qualified bidder. (See *City of Inglewood-L.A. County Civic Center Auth.* v. *Superior Court, supra.*) On the contrary, City specifically stated in its summary of proposals that R & A's "pro-forma was unrealistic and contained admitted inaccuracies." This language shows a dissatisfaction with R & A's proposal and explains why City exercised its discretion by awarding the contract to a lower bidder, i.e., one who proposed a lower annual revenue for City. City had the right and the obligation to consider the practicability of each bid before awarding the contract. R & A has not shown that City acted fraudulently or corruptly in performing its duty. Thus there is no basis for awarding the writ of mandate requested by R & A.

██ R & A contends that the judgment entered by the trial court is void. R & A reasons that it received a hearing on the petition for a writ of mandate, but no hearing on the second cause of action for declaratory relief or on the third cause of action for injunctive relief. In fact the trial court did not deny hearing on the other causes of action, but placed them off calendar. ██ "A court calendar is a list of causes awaiting hearing on motion or trial. [Citation.] . . . The court for good cause has discretion in the control and regulation of its calendar or docket. [Citation.] It is permissible for good cause to delay a trial or hearing to a later date or to drop or strike a case from the calendar, to be restored on motion of one or more of the litigants or on the court's own motion. 'Off Calendar' is not synonymous with 'dismissal.' 'Off' merely means a postponement whereas a 'dismissal'

---

[7]R & A makes no allegation of fraud by City.

in judicial procedure has reference to a cessation of consideration. Courts have control of pleadings in a case until a valid final judgment is rendered. [Citation.]" (*Guardianship of Lyle* (1946) 77 Cal.App.2d 153, 155-156 [174 P.2d 906].) ▉ Thus, R & A's contention that the judgment on the writ petition is void is without merit. R & A's error is in its belief that the judgment in this matter includes all three causes of action. It does not. Nevertheless, the single issue underlying all three causes of action, i.e., whether City had discretion in awarding the lease, was resolved against R & A. The trial court had before it one lawsuit seeking three different remedies. It did not have three separate causes of actions or potentially three separate lawsuits. ▉ In determining the existence of a cause of action, California subscribes to the primary rights theory. (*Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593].) Under the theory, the invasion of one primary right gives rise to a single cause of action. (*Ibid.*; *Wulffen* v. *Dolton* (1944) 24 Cal.2d 891, 895-896 [151 P.2d 846].) It is the right sought to be established, not the remedy or relief, which determines the nature and substance of the cause of action. (*Ideal Hardware etc. Co.* v. *Dept. of Emp.* (1952) 114 Cal.App.2d 443, 448 [250 P.2d 353].) ▉ R & A alleged a violation of what it deems its primary right to be chosen as the highest responsible bidder, a right found created by certain statutes and case law. The trial court determined that City had discretion in choosing from among the bidders for the concession lease. By this determination the trial court ruled that R & A had no cause of action against City and therefore no remedy for mandatory injunction. When this judgment becomes final, it will be a bar to the remainder of the lawsuit. R & A's authority, *Spector* v. *Superior Court* (1961) 55 Cal.2d 839 [13 Cal.Rptr. 189, 361 P.2d 909] and *Moore* v. *California Minerals etc. Corp.* (1953) 115 Cal.App.2d 834 [252 P.2d 1005], in which parties were denied a hearing in the trial court have no application. R & A had a full hearing on the pertinent issues: which legislation controlled and whether City had discretion in choosing the lessee.

The judgment is affirmed.

Feinerman, P. J., and Eagleson, J., concurred.

A petition for a rehearing was denied October 3, 1985, and appellant's petition for review by the Supreme Court was denied December 30, 1985.