[No. D006719. Fourth Dist., Div. One. Feb. 26, 1988.]

SAN DIEGO SERVICE AUTHORITY FOR FREEWAY
EMERGENCIES et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
CUBIC COMMUNICATIONS, INC., Real Party in Interest

**COUNSEL**

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, Thomas Lundmark, Deputy County Counsel, Orrick, Herrington & Sutcliffe, Robert E. Freitas, Kathryn Doi, Post, Kirby, Noonan & Sweat and Gregory A. Post for Petitioners.

No appearance for Respondent.

Luce, Forward, Hamilton & Scripps, Robert G. Steiner, Gregory D. Roper and Dana J. Dunwoody for Real Party in Interest.

**OPINION**

**WIENER, Acting P. J.**—San Diego Service Authority for Freeway Emergencies (San Diego SAFE) and Comarco Inc. (Comarco) seek a writ of

mandate and/or prohibition after Cubic Inc. (Cubic) obtained a preliminary injunction and writ of mandate restraining implementation of a contract between San Diego SAFE and Comarco and requiring San Diego SAFE to engage in competitive bidding. At the direction of the Supreme Court we issued an alternative writ. We discharge the alternative writ and grant the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

Section 2550 of the Streets and Highway Code[1] provides that a county and certain cities may by resolution establish a local Service Authority for Freeway Emergencies (service authority or SAFE). Pursuant to section 2550, San Diego County and the required cities established San Diego SAFE to implement an emergency call box system on San Diego County freeways. San Diego SAFE solicited bids for an emergency call box system (the project) and subsequently contracted with Comarco, purportedly the second lowest bidder. The project is to be financed by a lease/purchase agreement requiring payments from revenues generated by a special registration fee assessed, pursuant to Vehicle Code section 9250.10, on San Diego County vehicles.

San Diego SAFE filed a complaint for validation of the lease/purchase agreement and the source of payments. Cubic, purportedly the low bidder on the project, answered, petitioned for a writ of mandate, and cross-complained for injunctive relief. The court issued a writ of mandate commanding San Diego SAFE to apply competitive bidding to the call box contract, to award the contract to the lowest qualified bidder, and to set aside the Comarco Contract. The court also issued a preliminary injunction restraining San Diego SAFE from going forward with the awarded contract. These proceedings ensued.

### DISCUSSION

### I

 ██ The sole issue in this case is whether San Diego SAFE is required to apply competitive bidding principles in awarding the Comarco contract for the emergency call box system.[2]

---

[1] All statutory references are to the Streets and Highway Code unless otherwise specified.

[2] Where, as here, the Supreme Court orders the Court of Appeal to issue an alternative writ, the procedural appropriateness of extraordinary relief is conclusively determined. (E.g., *City of Oakland* v. *Superior Court* (1983) 150 Cal.App.3d 267, 272 [197 Cal.Rptr. 729]; *Mehr* v. *Superior Court* (1983) 139 Cal.App.3d 1044, 1049 [189 Cal.Rptr. 138].) Further, the pendency of a direct appeal does not alter this determination. (*City of Oakland* v. *Superior Court, supra;* see also *Lee* v. *Superior Court* (1961) 196 Cal.App.2d 161, 164 [16 Cal.Rptr. 268].) We

Cubic acknowledges that absent a statutory requirement, a public entity is not bound to engage in competitive bidding. (See e.g., *Smith* v. *City of Riverside* (1973) 34 Cal.App.3d 529, 535-536 [110 Cal.Rptr. 67]; *County of Riverside* v. *Whitlock* (1972) 22 Cal.App.3d 863, 877-878 [99 Cal.Rptr. 710]; 62 Ops. Cal. Atty. Gen. 643, 647 (1979).) Thus, to prevail Cubic must establish a legislative restraint on San Diego SAFE's ability to contract. The statutory scheme providing for the establishment of service authorities, sections 2550 et seq. (enabling legislation), does not contain a specific statutory requirement that service authorities engage in competitive bidding in awarding contracts. Nevertheless, Cubic contends both statute and public policy indirectly require San Diego SAFE to do so.

## II

We look first to whether public policy requires San Diego SAFE to engage in competitive bidding. Competitive bidding guards against favoritism, extravagance, fraud, and corruption; it serves the public by preventing waste and securing the best economic result. (See *Graydon* v. *Pasadena Redevelopment Agency* (1980) 104 Cal.App.3d 631, 636, [164 Cal.Rptr. 56] cert. den. (1980) 449 U.S. 983 [66 L.Ed.2d 246, 101 S.Ct. 400]; *City of Inglewood-L.A. County Civic Center Auth.* v. *Superior Court* (1972) 7 Cal.3d 861, 866-867 [103 Cal.Rptr. 689, 500 P.2d 601].) Notwithstanding the powerful purposes served by competitive bidding, there is no all-pervasive public policy that requires all public entities to engage in that practice. Rather, the Legislature imposes competitive bidding requirements on public entities within its purview when the Legislature determines it is in the public interest to do so.

The legislative determination to require competitive bidding necessarily requires the Legislature to evaluate an entity's function and to examine the particular type of contract involved.

In at least two instances, the Legislature has exempted public agencies from competitive bidding requirements for the purchase of telecommunications equipment and systems. Under Public Utilities Code section 130238, county transportation commissions purchase specialized equipment, including telecommunications equipment, through competitive negotiations rather than competitive bidding. Likewise, Public Contract Code sections 12100 and 12102 excepts state agencies from competitive bidding requirements in purchasing electronic data processing and telecommunications goods and

---

therefore reject Cubic's argument the petition should be denied because there is an adequate legal remedy.

We requested letter briefs from the parties on the issue of mootness. After reviewing the submitted letters, we are satisfied the proceedings are not moot.

services. In these areas of specialized equipment and rapid technological changes, the Legislature has recognized that competitive bidding may not ultimately be cost effective or in the public interest. The enabling legislation's failure to impose competitive bidding requirements on a SAFE's contracting for emergency call box systems is thus consistent with the Legislature's past treatment of contracts for the purchase and implementation of telecommunications equipment and systems.

Obviously, it is conceptually difficult to interpret the enabling legislation as requiring competitive bidding when the legislation does not so provide. Cubic, however, argues the Legislature's failure to specifically exempt service authorities from competitive bidding requirements indicates a legislative intent to subject service authorities to such requirements. Cubic relies on Public Utilities Code section 130238 as an example of a legislatively created exception to competitive bidding requirements. As we have discussed, section 130238 does except county transportation commissions from competitive bidding on certain contracts. However, Public Utilities Code section 130232 first imposes a general competitive bidding requirement. Here, where the enabling legislation does not impose a competitive bidding requirement, an exception would be meaningless.

Cubic directs us to Public Contract Code section 102 to argue public policy requires San Diego SAFE to engage in competitive bidding. Public Contract Code section 102 states that, to the maximum extent possible, California public contract law should be uniform "for similar work performed for similar agencies." Section 102 represents a statement of the laudable goal that public contract law should be uniform to the extent possible; it does not impose any requirements on any agencies. In practice, there are numerous situations where similar agencies performing similar work are not subject to the same competitive bidding requirements. Even the same agency may be subjected to different requirements at different times. It is well established that charter cities and general law cities are not subject to the same competitive bidding requirements for similar projects. (See e.g., *Smith* v. *City of Riverside, supra,* 34 Cal.App.3d at p. 529; *R & A Vending Services, Inc.* v. *City of Los Angeles* (1985) 172 Cal.App.3d 1188 [218 Cal.Rptr. 667].) Irrigation districts are required to follow competitive bidding for construction projects only where the contract is financed by proceeds of the sale of bonds or a limited assessment. (See Pub. Contract Code, §§ 20561, 20566; *Andrews* v. *Bd. of Dir. Modesto Irr. Dist* . (1952) 113 Cal.App.2d 780 [248 P.2d 971].) Until 1987 public fire districts were not subject to any competitive bidding requirements. (See Pub. Contract Code, § 20810 et seq.) Transit districts have different monetary minimums on contracts before competitive bidding is required. (See e.g., Pub. Contract Code, § 20271 [San Diego County Transit District, $5,000]; § 20281 [Santa

Barbara Metropolitan Transit District, $3,000 or $10,000 depending on the type of contract].)

Stressing the significance of California public policy as set forth in Public Contract Code section 102, Cubic argues that San Diego SAFE is required to engage in competitive bidding because the county and the cities that established the entity would be required to engage in competitive bidding if they individually let the contract. (See Pub. Contract Code, 20128 [counties], § 20162 [general law cities]; Charter of San Diego § 94).) Even if we were to accept Cubic's argument on this point (i.e. that the whole is limited by the powers of the parts), Cubic overlooks the legal reality that San Diego SAFE is not simply an entity that the county and cities have established in order to carry out a public works project. It is a separate entity provided for by the Legislature pursuant to section 2550 et seq. As a separate entity, SAFE is not subject to statutory provisions requiring competitive bidding of San Diego County or the participating cities.[3]

### III

Cubic also asserts we must require San Diego SAFE to engage in competitive bidding because SAFEs could finance the implementation and maintenance of an emergency call box system by issuing revenue bonds pursuant to either the Revenue Bond Law of 1941, Government Code section 54300 et seq., or the sewer bond provisions of the Health and Safety Code section 4950 et seq. (the bonding provisions). (§ 2555, subd. (a).) Both the Revenue Bond Law of 1941 and the sewer bond provisions contain competitive bidding provisions. (Gov. Code § 54516.2; Health & Saf. Code §§ 5010, 5015.)

It is Cubic's position that because the revenue bond statutes require competitive bidding, competitive bidding must be required even where, as

---

[3] Inherent in our conclusion is our rejection of Cubic's argument that *City of Inglewood-L.A. County Civic Center Auth.* v. *Superior Court, supra,* 7 Cal.3d 861, requires an agency created by local entities to comply with competitive bidding, even when creation of that agency is authorized by state statute. *City of Inglewood* addressed whether competitive bidding requirements normally imposed on a joint powers entity applied to a management contract. (*Id.* at p. 864.) Joint exercise of powers agreements by two or more public agencies are provided for under Government Code section 6500 et seq. Under Government Code section 6503, the joint powers agreement must set forth the power to be exercised and the manner in which the power will be exercised. Under Government Code section 6509 the joint "power is subject to the restrictions upon the manner of exercising the power of one of the contracting parties, which party shall be designated by the agreement."

The joint powers agreement between the City of Inglewood and Los Angeles County provided that the powers of the joint power entity would be subject to the restrictions imposed upon the county in exercising its powers. (*Id.* at p. 864, fn. 2.) The court therefore used the competitive bidding requirements imposed on a county in discussing the competitive bidding requirements imposed upon the joint powers entity.

here, financing is accomplished solely through imposition of a vehicle registration fee pursuant to section 2553 and section 2554, subdivision (a). That is, competitive bidding must be required in all instances to encourage competitive efficiency and uniformity in public contracting. (See Pub. Contract Code, § 102.)

Cubic's position overlooks two important considerations: 1) SAFEs may fail to issue revenue bonds thereby never giving rise to competitive bidding requirements in any instance, and 2) imposing competitive bidding requirements in all instances would require this court to find the Legislature intended to impose a competitive bidding requirement by implication.[4]

■ A court should not presume the Legislature intended to legislate by implication. (*People* v. *Welch* (1971) 20 Cal.App.3d 997, 1002 [98 Cal.Rptr. 113].) Although in years past it may have been necessary for courts to read into a statute provisions not specifically expressed by the Legislature, the modern rule of construction disfavors such practice. (See *Educational & Recreational Services, Inc.* v. *Pasadena Unified Sch. Dist.* (1977) 65 Cal.App.3d 775, 782 [135 Cal.Rptr. 594].)

■ The enabling legislation does not set forth any limitations on a service authority's ability to contract. We must presume that if the Legislature had wanted to require competitive bidding in all instances it would have done so specifically. Cubic has failed to cite any example where the Legislature imposed a competitive bidding requirement by other than a specific statutory provision. We therefore conclude that where a service authority uses fees collected pursuant to Vehicle Code section 9250.10 as its sole source of financing a contract for an emergency call box system, no competitive bidding requirement is imposed either directly in the enabling legislation or indirectly through the revenue bond provisions.[5]

## DISPOSITION

The alternative writ is discharged. Let the writ issue directing the trial court to vacate the peremptory writ and the order that a writ of mandate and preliminary injunction issue and directing the trial court to enter a new and different order consistent with this opinion. San Diego SAFE and Comarco to recover cost for this proceeding.

Benke, J., concurred.

---

[4] Solely for purposes of analysis, we assume a SAFE must engage in competitive bidding if it chooses to issue revenue bonds.

[5] Cubic's allegations of administrative bias and preselection are irrelevant to the issue before us. We therefore do not address them.

**BUTLER, J.**—I concur in the result, parting company with my colleagues' conclusion San Diego Service Authority for Freeway Emergencies (SAFE), as a matter of law, is not required to award this contract to the low bidder, whoever that may be. That conclusion is not necessary to disposition of this writ proceeding. Simply stated, the proposed award of the contract to Comarco is excepted from any requirement, expressed in statutes or implied by law, that the contract be awarded the lowest bidder.

"As a general rule, competitive bidding for public entities is a mandatory requirement as provided by statute, charter or ordinance [citation]. However, there are certain well recognized exceptions to said rule. One exception is where the nature of the subject of the contract is such that competitive proposals would be unavailing or would not produce an advantage, and the advertisement for competitive bid would thus be undesirable, impractical, or impossible. [Citations.]

"The rationale for the adoption of the above exception is found in the purposes of the provisions requiring competitive bidding in letting public contracts. Those purposes are to guard against favoritism, improvidence, extravagance, fraud and corruption; to prevent the waste of public funds; and to obtain the best economic result for the public. [Citation.] However, the competitive bid requirement is to be construed fairly and reasonably with sole reference to the public interest and in light of the purposes to be accomplished. [Citations.] Therefore, it has been held that where competitive proposals work an incongruity and are unavailing as affecting the final result, or where competitive proposals do not produce any advantage, or where it is practically impossible to obtain what is required and to observe such form, competitive bidding is not applicable. [Citation.]" (*Graydon* v. *Pasadena Redevelopment Agency* (1980) 104 Cal.App.3d 631, 635-636 [164 Cal.Rptr. 56].)

*Graydon,* at pages 636-637, cites a number of cases applying the exception in a variety of contexts. SAFE's request for proposals falls within the exception applicable to contracts calling for special skills and services.

The contract here does not call for a year's supply of paper clips or like commodity readily obtainable over the counter or through catalogues. Minutes of a meeting of SAFE's board of directors tell the story:

"SUBJECT

"SELECTION OF VENDOR FREEWAY CALL BOX PROJECT

"INTRODUCTION

"Five bidders originally submitted proposals to SAFE. Three of the five submitted complete bid packages and hardware for testing. These three firms are Comarco, Inc.; Cubic Communications, Inc.; and Motorola.

"As directed by your Board, a Technical Evaluation Committee was appointed to evaluate the proposals. This committee, composed of SAFE Executive staff, Caltrans, California Highway Patrol, City of San Diego Communications, and SAFE's technical consultant evaluated the proposals based on the following criteria:

"1. Price Proposals

"2. Evaluation of Technical Proposals

"a. Lab Testing

"b. Field Testing

"3. Design Enhancements. These are technical features beyond the minimum required in the bid specifications.

"4. Project Management, including previous experience.

"5. MBE/WBE Participation

"6. CHP Review

"Based on the evaluation of these criteria, the Technical Evaluation Committee presents the following recommendation to the SAFE Board.

"RECOMMENDATION

"Direct the Executive Director to prepare a contract to include 10 year vendor financing with Comarco, Inc. for purchase and installation of the 963 call box system.

"DISCUSSION

"Bidders were required to submit technical proposals and pricing for system sizes of 755, 963, and 1,382 boxes. The bidders were requested to provide vendor financing proposals for 5, 10, 15 and 20 year pay back periods."

The minutes reflect discussion of the criteria. Price proposals considered vendor financing and public financing and compared the three proposals. Motorola did not propose vendor financing. Comarco's and Cubic's vendor financing were close, $9,641,200 for Comarco, $9,467,000 for Cubic, a difference of 1.8 percent.

The three bidders submitted production configuration equipment for testing in addition to written technical proposals. Cubic's radio receiver initial-

ly failed and was resubmitted with a design modification that did not comply with specifications. Comarco equipment passed field testing. Cubic's equipment was deficient in several respects and did not demonstrate required public telephone network interface.

The California Highway Patrol, citing extensive experience with mobile radio communications, concurred in the selection committee recommendation of Comarco.

The evaluation committee recommended Comarco based on seven findings, all of which are supported by its report and attachments. SAFE's board of directors considered questions raised by vendors and answers provided by its staff. These questions and answers further demonstrate the freeway emergency telephone system proposed to be purchased, installed and operated by SAFE is unique, one-of-a-kind, and not available except through vendor design and vendor-prepared specifications, field testing of components and consideration and comparison of technical features, maintenance and financing options.

The conclusion is inescapable. The freeway emergency telephone system required by SAFE to fulfill its statutory responsibilities is not subject to competitive bid, because it is unique, one-of-a-kind, and the public fisc would not be served by a competitive bid requirement. The majority reaches the right result for the wrong reasons.

The petition of real party in interest for review by the Supreme Court was denied May 5, 1988. Mosk, J. was of the opinion that the petition should be granted.