OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

|  |  |
|---|---|
| OPINION | : |
| | :     No. 90-402 |
| of | : |
| | :     <u>DECEMBER 13, 1990</u> |
| JOHN K. VAN DE KAMP | : |
| Attorney General | : |
| | : |
| CLAYTON P. ROCHE | : |
| Deputy Attorney General | : |
| | : |

---

THE HONORABLE JOHN W. ANDERSON, COUNTY COUNSEL, DEL NORTE COUNTY, has requested an opinion on the following questions:

1. When a county having a population of 500,000 or less rejects all competitive bids on a public project, and the board of supervisors, after reevaluating the county's cost estimates on the project, by a four-fifths vote declares that in its opinion the project can be negotiated at a lower price than any of the bids which were submitted, may the county thereafter negotiate a contract with a contractor who did not submit a bid on the project?

2. When a county having a population of 500,000 or less negotiates a contract for a public project under the circumstances set forth above, may it proceed with the project where (1) the negotiations with the contractor result in a contract based upon the original plans and specifications, but (2) during the negotiations the contractor identifies changes which can be made to the project which will substantially reduce the overall cost of the project, and (3) the county executes change orders after the contract is entered into in conformity with the identified changes to substantially reduce the cost of the project?

CONCLUSIONS

1. Until January 1, 1991, when a county having a population of 500,000 or less rejects all competitive bids on a public project, and the board of supervisors, after reevaluating the county's cost estimates on the project, by a four-fifths vote declares that in its opinion the project can be negotiated at a lower price than any of the bids which were submitted, the county may thereafter negotiate a contract with a contractor who did not submit a bid on the project.

2. When a county having a population of 500,000 or less negotiates a contract for a public project under the circumstances set forth above, the county may not thereafter proceed with the project where (1) the negotiations with the contractor result in a contract based upon the original plans and specifications, but (2) during the negotiations the contractor identifies changes which can be made which will substantially reduce the overall cost of the project, and (3) the county executes

1.           90-402

change orders after the contract is entered into in conformity with the identified changes to substantially reduce the cost of the project.

ANALYSIS

The Local Agency Public Construction Act is found in section 20100 et seq. of the Public Contract Code.[1] The law generally governs the letting of construction contracts through the competitive bidding process by cities, counties, school districts, and numerous specified special districts and other local agencies. As to counties, sections 20120-20145 apply, except that special provisions found in sections 20150-20150.14 are applicable to counties of 500,000 or less population. (See 64 Ops.Cal.Atty.Gen. 800 (1981); 63 Ops.Cal.Atty.Gen. 744 (1980).) Our focus herein is on these latter provisions.

Section 20150.1 requires counties of 500,000 or less population, whether general law or charter, to follow the bidding procedures set forth in sections 20150-20150.14 for "public projects" as defined therein. "Public project" is defined in section 20150.2, subdivision (a), to mean: "A project for the erection, improvement, and repair of public buildings and works." Section 20150.4 permits "public projects" between $4000 and $10,000 to be contracted out by either informal or formal bid. It then requires that contracts for projects of $10,000 or more be let by formal bidding procedures.

Sections 20150.9 and 20150.10 set forth provisions regarding a county's rejection of all bids and the subsequent procedures it may then follow. Section 20150.9 provides:

"In its discretion, the county may reject any bids presented. If, after the first invitation for bids, all bids are rejected, after reevaluating its cost estimates of the project, the county shall abandon the project or shall readvertise for bids in the manner prescribed by this article. If after readvertising, the county rejects all bids presented, the county may proceed with the project by use of county personnel or may readvertise. If two or more bids are the same and the lowest, the county may accept the one it chooses. If no bids are received, the county may have the project done without further complying with this article."

Section 20150.10 states:

"Notwithstanding the provisions of section 20150.9, if, after the first invitation for bids, all bids are rejected, the county may, after reevaluating its cost estimates of the project, pass a resolution by a four-fifths vote of its board of supervisors declaring that the project can be performed more economically by county personnel, or that in its opinion a contract to perform the project can be negotiated at a lower price than that in any of the bids, or the materials or supplies furnished at a lower price in the open market. Upon adoption of the resolution, it may have the project done in the manner stated without further complying with this article."

Section 20150.11 prohibits the splitting of public projects into separate or smaller work orders or projects to avoid competitive bidding requirements. Finally sections 20150.12 and 20150.13 require the adoption of plans and specifications for public projects over $10,000 and require that all bidders be afforded an opportunity to examine such plans and specifications. With

---

[1]All section references are to the Public Contract Code unless otherwise indicated.

this statutory background in mind, we examine the basis upon which the questions were posed for our resolution.

The facts presented in this request for our opinion involve the renovation of the courthouse in a county of less than 500,000 population. The board of supervisors adopted plans and specifications for the project with an architect's estimate of $2.7 million for the entire project's costs. The county advertised for bids and two were received. The low bid was $4.5 million, or nearly 60% more than the estimated cost.

The county reevaluated its cost estimates, and thereafter the board of supervisors adopted a resolution rejecting all bids and by a four-fifths vote declared that in its opinion the project could be negotiated at a lower price than either of the bids which were submitted. The county first attempted to negotiate with the lowest bidder and such negotiations failed. The county then attempted to negotiate with the second bidder, but that bidder was not interested in entering into negotiations.

The county then found a third contractor and entered into negotiations. These negotiations culminated in the county entering into a contract for the courthouse renovation for $3.91 million based upon the original plans and specifications. During the negotiations, however, the contractor identified changes which could be made in the plans and specifications that would reduce the cost of the project to $2.85 million. After the execution of the contract, the county proposed change orders to conform with the changes previously identified by the contractor to reduce the contract price to $2.85 million.

The change orders included both design changes and material changes. For example, the largest change order was for redesigning the heating system for a savings of $150,000. Another major change was redesigning the roof for a savings of $111,000. A third major change was redesigning the lighting system for a savings of $108,000. Other design changes included redesigning skylights for a savings of $65,000, and providing a revised structural system for the central atrium for a savings of $39,000.

Material changes included such matters as painting walls instead of using vinyl wall covering or interior wall panelling for a savings of $50,000, and providing galvanized sheet metal gutters in lieu of lead gutters for a savings of $20,000. Finally, certain items were eliminated from the original plans and specifications such as exterior clocks, modular seating, and demolition work for a total savings of $73,800. The changes made by way of the change orders reduced the contract price by approximately 27%.

1. Negotiations With Contractor Who
   Did Not Submit Competitive Bid

The first question presented herein is whether the county was authorized pursuant to section 20150.10 to negotiate with a contractor who had not submitted a competitive bid. We conclude that this was proper.

It has been suggested that as a matter of policy the county should be prohibited from negotiating with a contractor who had not submitted a bid since such negotiations would undercut the policy of the law to foster competitive bidding.

(See § 3400, subd. (a); *San Diego Service Authority for Freeway Emergencies* v. *Superior Court* (1988) 198 Cal.App.3d 1466, 1469 ["Competitive bidding guards against favoritism,

extravagance, fraud, and corruption; it serves the public by preventing waste and securing the best economic result"].)

However, section 20150.10 contains no such restriction. To imply such a restriction would add words to the section and essentially rewrite it. Such is not permitted under the guise of statutory interpretation. (See *People* v. *Williams* (1981) 30 Cal.3d 470, 489; *People* v. *Rodriguez* (1990) 219 Cal.App.3d 688, 692-693.) "`It is . . . against all settled rules of statutory construction that courts should write into [] statute[s] by implication express requirements which the Legislature has not seen fit to place into the statute[s].'" (*League of Women Voters* v. *Countywide Crim. Justice Coordination Com.* (1988) 203 Cal.App.3d 529, 557.)

Furthermore, the suggested limitation will in fact be added to section 20150.10 by Statutes of 1990, chapter 694.[2] This is evidence that section 20150.10, <u>as it presently reads</u>, was not intended to limit a negotiated contract to the original bidders. "`"[I]t would seem that any essential change in the phraseology of a statutory provision would indicate an intention on the part of the legislature to change the meaning of such provision rather than interpret it." (Citations.)' . . ." (*Judson Steel Corp.* v. *Workers Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 666, fn. 6.)

In answer to the first question, therefore, we conclude that until January 1, 1991, when a county having a population of 500,000 or less rejects all competitive bids on a public project, and the board of supervisors, after reevaluating the county's cost estimates on the project, by a four-fifths vote declares that in its opinion the project can be negotiated at a lower price than any of the bids which were submitted, the county may thereafter negotiate a contract with a contractor who did not submit a bid on the project.

## 2. Proceeding Under The Change Orders

The second question presented is whether it was proper for the county to negotiate the contract for the courthouse renovation according to the original plans and specifications for $3.91 million and thereafter execute change orders to conform to changes which were identified by the contractor <u>during negotiations</u>. As noted, the contract price was reduced to $2.85 million, a reduction of approximately 27%. As just discussed, these changes were numerous and involved changes in the plans and specifications as to both design matters and the materials to be used in the project.

The legal issue presented by such facts is whether the change in the contract was so substantial that it should have been again put out to competitive bid pursuant to the governing provisions of the Local Agency Public Construction Act.

Before the turn of the century, California case law recognized that to make <u>substantial</u> changes in a contract after it has been let constitutes an evasion of competitive bidding laws. Thus, in *Warren* v. *Chandos* (1896) 115 Cal.382 a contract for street grading had been let through the competitive bidding process. Under the governing law, the property owners had the option of permitting the contract to be awarded through competitive bidding, or they could elect to do the work themselves at the same price. After the contract had been let, the grading to be done

---

[2] The phrase "with the original bidders" will be added effective January 1, 1991, as follows:

". . . or that in its opinion a contract to perform the project can be negotiated with the original bidders at a lower price than that in any of the bids . . . ."

under the contract was changed so as to lessen both the cost of the contract and the street assessment.

The court, in holding this to be improper and unauthorized, stated in part:

> ". . . Before the contract can be awarded, notice, `with specifications' inviting proposals for doing the work ordered, must also be posted and published, and the contract therefor is to be awarded to the lowest responsible bidder. The privilege is then given to the owners to do the work themselves at the price at which it was awarded, and thus be relieved from all burden except its actual cost. But if, after the contract has been awarded and entered into with the successful bidder, the character of the improvement can be changed, or the amount of work necessary for its completion increased or diminished, they are not only deprived of the benefit of a competition between bidders before the award, but they are also deprived of an opportunity to determine whether it would be to their advantage to enter into the contract themselves.

> In the present case it appears that the amount of work required for grading the street to the official line, which was fixed after the contract was awarded, was thereby reduced to such an extent as to materially affect the cost of the improvement. Whether the amount of the assessment was thereby increased or diminished is immaterial. . . ." (*Id.*, at p. 385.)

The other side of the coin is presented by the case of *Bent Bros., Inc.* v. *Campbell* (1929) 101 Cal.App. 456. There the court held with respect to a construction contract let through competitive bidding that changes could be made in the contract for extra work in an emergency where such changes were not substantial. The following discussion by the court is pertinent to our inquiry:

> "To review all the authorities bearing upon the questions here involved would extend this opinion to an undue length. Therefore, we will confine our citation of authorities to a limited number, which support the following statements of the law: That where unseen emergencies arise after the letting of a contract and the beginning of work, further publication and letting of bids are not required: [Citations.] Various illustrations are given in the cases just cited as to the changes in the plans necessitated by emergencies arising after the beginning of the work, and all of the cases hold that such changes do not invalidate the contract. <u>A distinction, however, is made in all of the cases, between amendments or alterations in the plans and specifications which do not affect the material character of the work and those admitted changes or alterations which constitute substantial modifications or changes in the character and quality of the work to be performed. Where changes are only incidental, the contract is held unaffected; otherwise a different conclusion is reached.</u> In the case at bar nothing has been called to our attention which would indicate any substantial change, either in the character of the work to be done, or, in view of the extent of the work to be done, any really substantial addition thereto. As we have shown, the added work does not reach the percentage degree approved in the case of *Frazer et al.* v. *City of Ardmore*, *supra*." (*Id.*, at pp. 469-470, emphasis added.)

(See also 11 Ops.Cal.Atty.Gen. 33 (1948); 10A McQuillin, Municipal Corporations (3d ed. 1990) § 29.121, p. 153 ["Generally, power to modify does not confer authority to make a new or different agreement"]; Annot., Evasion of Law Requiring Contract For Public Work To Be Let To Lowest

Responsible Bidder By Subsequent Changes In Contract After It Has Been Awarded Pursuant To That Law (1930) 69 A.L.R. 697.)

Or as cogently stated in the relatively recent case in a sister jurisdiction, *Kenai Lumber Co., Inc*. v. *Le Resche* (Alaska 1982) 646 P.2d 215, 220:

"[G]enerally a government contract that was initially competitively bid cannot be materially amended because that is tantamount to forming a new contract, which should be accomplished by starting all over again with competitive bidding.

"This rule has been judicially imposed in order to guard against circumvention of competitive bidding requirements. Competitive bidding itself is designed to ensure that government obtains the most favorable terms possible in its contracts, and to protect the public from the possibility of favoritism, fraud, and corruption on the part of public officials. . . ."

In our view change orders are appropriately contemplated where, during the performances of the contract, unforeseen matters are discovered which require some modification to complete the contract. They are not intended to cover the situation where the changes were already identified before the contract was awarded by the county.[3]

In short, the changes with respect to the courthouse renovation at issue herein were not authorized under section 20150.10. We believe that such substantial changes amounting to a reduction of 27% from the contract price in effect provided for a new "project." The word "project" as used in section 20150.10 means the "project" as originally put out to bid without substantial change.[4]

In answer to the second question, therefore, we conclude that when a county having a population of 500,000 or less negotiates a contract for a public project after rejecting all bids and making the requisite declaration, it may not proceed with the project where (1) the negotiations with the contractor result in a contract based upon the original plans and specifications, but (2) during the negotiations the contractor identifies changes which can be made to the project which will substantially reduce the overall cost of the project, and (3) the county executes change orders after the contract is entered into in conformity with the identified changes to substantially reduce the cost of the project.

\* \* \* \*

---

[3]This type of legitimate change order is prescribed throughout the Local Agency Public Construction Act for various entities. (See, e.g., §§ 20118.4, 20128, 20135-20138, 20206.2-20206.3, 20405, 20447, 20452, 20455, 20659.) In these provisions it is common to find a limit on the amount of such changes, for example, 10% or a fixed dollar amount. These limits would appear to be inserted to ensure that substantial changes are not made which would, in effect, constitute the making of a new contract.

[4]The existence of any general exemptions from competitive bidding requirements (see *Graydon* v. *Pasadena Redevelopment Agency* (1980) 104 Cal.App.3d 631, 636) is beyond the scope of this opinion.