Filed 11/19/21  Nickelson v. Nickelson CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MAURICE NICKELSON,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>KARLA NICKELSON,<br><br>Defendant and Respondent. | B302583<br><br>(Los Angeles County Super. Ct. No. 19IWRO00885) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  William V. McTaggart, Judge Pro Tempore, and Patricia J. Titus, Judge.  Affirmed with directions.

Maurice Nickelson, in pro. per., for Plaintiff and Appellant.

Karla Nickelson, in pro. per., for Defendant and Respondent.

———————————————

This case arises from the trial court's dismissal of cross-requests for domestic violence restraining orders (DVRO) by two adult siblings—brother and sister—residing in their father's home. The brother appeals the trial court's dismissal of his request for a DVRO and contends that the court also erred in not ruling on his restitution claim against his sister for property damage. We conclude that the trial court failed to determine appellant's property claim but otherwise affirm the judgment with directions.

## FACTUAL AND PROCEDURAL HISTORY

### I.    The Parties

Appellant Maurice Nickelson (43) and respondent Karla Nickelson (49) live together in Los Angeles with their 76-year-old father, Melvin Nickelson (the homeowner), their brother Marc Nickelson, and Karla's three adult children. As adults, Maurice and Karla have lived in their father's house together for around 10 years.

### II.    Maurice's Domestic Violence Restraining Order Request and Temporary Restraining Order Against Karla

On July 22, 2019, Maurice filed a request for a DVRO against Karla, in propria persona. He sought move-out, stay-away, and antiharassment orders, permission to record communication made to him by Karla in violation of the court's orders, and orders that Karla attend a 52-week batterer intervention program and receive "medical/mental health evaluation and treatment."

In his request, Maurice alleged that on July 19, 2019, Karla punched him in the face, causing slight bruising and swelling on his right cheek, then verbally abused him, denied him access to

2

the telephone to call 911, and pushed him from behind, causing him to fall into a desk and table, which was heard but not visually observed by Marc. Maurice stated that police arrived and attempted to talk to Karla, but she locked all the doors and would not come outside. He further alleged that on March 7, 2019, Karla kicked him in the leg after following him and yelling verbal abuse at him with "extreme anger" for over 30 minutes and that this incident also was heard but not directly seen by Marc. Police arrived and gave him restraining order advice and advice about how to get mental health help for Karla, but at that time he decided not to pursue anything unless things escalated.

Prior to these two incidents, Maurice alleged harassment by Karla toward him had been escalating for 10 years, including physical acts of spitting on him, "stomp[ing] on [his] feet for no reason," turning off the hot water heater when he wanted to take a bath, and intentionally bumping into him to try to provoke him. The alleged verbal harassment and "bullying" incidents included Karla forcing entry into his private room and "trashing" his room and personal items, following and yelling at him without provocation, destroying his room locks so that he had to enter by the window, stealing personal belongings and tampering with his food, and threatening him and stating that she wished he were dead.

On July 22, 2019, the trial court partly granted and partly denied a temporary restraining order, ordering that Karla must not "Harass, attack, strike, threaten, assault (*sexually or otherwise*), hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, impersonate (*on the Internet, electronically, or otherwise*), or block movements" of Maurice, and that Maurice had the right to record

3

communication by Karla that violated the court's orders. The trial court denied until a hearing Maurice's requests for move-out and stay-away orders, stating it was "unclear that you have the right to have her removed from the premises" and that "[s]tay away is unenforceable/impractical since you live together," and noting that there was "no arrest when police arrived on the scene." The trial court also denied, until a hearing, Maurice's requests that Karla receive a medical/mental health evaluation and attend a batterer intervention program.

On August 7, 2019, Karla filed a response, stating she did not agree with any of the requested orders "because there was no (and never has been any) abuse nor harassment on my part."

On August 13, 2019, Maurice filed a declaration in the form of a printed questionnaire signed by their brother Marc, which stated that Marc had seen Karla verbally harass Maurice and that Karla and Maurice had "very loud arguments at least two times a week." Marc declared that on July 19, 2019, he heard Karla say she was going to fight Maurice "like a man" and that Marc observed bruising on the right side of Maurice's cheek or face after Maurice claimed Karla hit him. Marc also declared that Karla had harassed their father, Melvin, by saying she was going to put Melvin in jail based on false statements and that Marc's own relationship with Karla was "friendly" but that she had falsely accused Marc of pulling a knife on her, told him to leave her alone when he had done nothing wrong, and was "allways [*sic*] calling the police trying to get someone arrested, base[d] on lies." The declaration was refiled on September 18, 2019, at the request of the trial court, which found the initial declaration "ambiguous" because the word " 'ANONYMOUS' " was handwritten next to Marc's signature line.

On August 23 and 26, 2019, Maurice filed requests for Melvin and Marc to be added to any approved permanent protective orders.

### III. Karla's Domestic Violence Restraining Order Request Against Maurice

On August 26, 2019, Karla filed a civil harassment case and a request for a DVRO against Maurice, with the assistance of counsel.[1] (*Nicholson v. Nicholson* (Super. Ct. L.A. County, 2019, No. 19IWRO01023).) Karla sought move-out, stay-away, and antiharassment orders as to her and her three adult children, permission to record communication made to her by Maurice in violation of the court's orders, and orders that Maurice attend a 52-week batterer intervention program and pay her attorney fees and costs.

Karla alleged that on July 19, 2019, Maurice tried to trip her as she entered the kitchen with dishes, turned off the hot water heater, hit her on the wrist and grabbed and dug his fingers into her arm, and blocked her from her living quarters. She denied that the police had come on that date. Karla alleged that Maurice had a history of violence and harassment over many years and had threatened her and her daughter with a knife on multiple occasions, locked her and her children out of the house, intentionally contaminated her food, spread trash around the house and used dangerous chemicals and aerosols inside the home to harass them, hid sharp knives in their clothes, towels, and dishwater, and that in 1990 he strangled their sister Karen Nickelson to the floor until her lips turned blue.

---

[1] Both parties are proceeding in propria persona on appeal.

The trial court denied a temporary restraining order until the hearing because of the existing temporary restraining order against Karla granted July 22, 2019.

On October 10, 2019, Maurice filed a response to Karla's request for a DVRO, stating that he did not agree to the orders she requested because he had never harassed or abused her or any of her children or done any of the intentional actions she alleged and that he could not pay her attorney fees as he himself was on a fee waiver. He disputed all of her allegations, noted that he would have been 13 at the time of the alleged strangling incident of their sister, and stated that Karla's claims consisted of "1) Complete fabrications that NEVER occurred[,] 2) Gross embellishments of actual events[,] 3) Acts by me that were NOT intentional, WERE done by mistake or may have been unwise judgment, but were NOT intended to harm anyone, did NOT harm anyone, and were NOT reckless."

On September 16, 2019, Maurice filed another declaration from his brother Marc, stating that the environment at home was peaceful since the temporary restraining order, there were no more arguments in the home, Maurice regularly cleaned the house and yard, and "everyone is on there [*sic*] best behavior."

## IV. Maurice's Property Claim

On October 3, 2019, Maurice filed a request for order for repayment of the value of stolen desk furniture. On October 10, 2019, the trial court ordered that Maurice's claim for restitution for damaged property would be heard at the upcoming restraining order hearing, stating that "any findings of fact relating to the claims made" in Maurice's request for order "will be determined at the October 15th hearing."

## V.      Hearing and Dismissal of the Restraining Order Requests

After three continuances, a hearing on both requests for a restraining order was held on October 15, 2019.  The trial court heard testimony from Maurice and Karla, Marc, and Karla's adult daughter Kristina Nickelson.  The court stated to the parties that given their opposing cases, it had "to figure out if there is a primary aggressor, and if there is, what do we do." Karla's counsel offered that this was a "very sad case, one that absolutely doesn't warrant a restraining order," and that her recommendation to the parties was that they seek family therapy to address the problems and tensions in their relationship.

Maurice testified that in 2017 Karla had come into his room, verbally harassed him, including calling him a "bitch-ass nigga," "loser," and "psychopath," and "trash[ed] the room" for no reason, yelling and knocking his possessions to the floor while Maurice remained calm.  Maurice claimed he had recorded video evidence of this incident, and the trial court instructed him just to describe what had happened.  Maurice testified that in 2018, Karla had filled her mouth with water, spit it out all over him, and yelled at the top of her lungs and verbally assaulted him similarly to the 2017 incident, including that "she hates me and wishes I was dead," "she's hated me ever since I was a baby," "no one likes me," and that he was "a loser with no accomplishments."  He denied ever pulling knives on Karla or her daughter.

Maurice testified that on March 7, 2019, Karla had kicked him after he suggested getting Medi-Cal for her daughter's healthcare.  Maurice testified that she had "blown up" at his suggestion, "became extremely loud and angry more so than I

7

have ever seen," followed him to his room, and kicked him in the leg. Prior to that date, Karla had only done "minor" physical things, like stomping his feet or shoving him.

Maurice described July 19, 2019, as an "escalating event." On that date, Karla kept turning the water heater off after he turned it on to take a bath. Eventually they were both standing by the water heater switch flipping it on and off in front of each other "in a childish manner," when Karla accused him of hitting her, punched him in the face causing a "small bruise," and blocked him from reaching the kitchen phone to call 911. Maurice told the trial court he had a video showing where she hit him under his eye, and the court replied that it would listen to what he had to say under oath. Maurice testified that after hitting him Karla pursued him down the hallway to his room, where she pushed him from behind and he "fell into the desk furniture." He stated that he had a picture of the desk he fell into.

Maurice admitted that at 6 feet 2 inches and 150 pounds he was "significantly taller" than Karla, who he believed to be 110 pounds. He claimed emotional distress from all the incidents, and that he felt after the July 19 incident that Karla's "anger is too risky, her escalating behavior is unsafe to live with," and it was starting to involve Karla's children acting against him as well.

Karla testified that she had observed Maurice "lunge" or "jabb[ing]" a knife in her daughter's direction, gesturing with a knife at Karla herself, and that he turned the hot water off and threw trash in her bath water. She stated that he hit her twice, in 2017 and 2018, and hit her wrist and grabbed it away from the knob on the hot water tank. Karla denied kicking him in March

8

2019.  She also stated that Maurice had intentionally left all the gas stove burners on, unlit, on multiple occasions.

Marc testified that he had not directly seen any physical violence by either sibling toward the other, just heard a scuffle when they got into a fight on July 19, 2019, and heard when they would "get into it" about turning the hot water heater on and off.  Marc stated that Maurice generally did not raise his voice during interactions with Karla, although Maurice "may say something that may be inappropriate sometimes," including comments about Karla's children.  Marc indicated that he felt stuck in the middle and said, "I hear them arguing all the time.  I don't know how it will stop.  It seem[s] like it's been escalating to the physical nature.  I want to avoid the police.  I don't want anybody going to jail or calling the police.  It's getting out of hand.  Hopefully this forum can correct everyone's behavior.  So far it's been peaceful in the house."

Kristina testified that Maurice often swept trash into different areas of the house and left the gas on, and that he made three thrusting motions with a knife at her in the kitchen the previous year.  Kristina stated that on July 19, 2019, she observed him try to trip Karla in the kitchen, then block Karla's exit in a threatening manner until Karla hit him in defense on the left cheek with a pack of butter.

The trial court concluded there was no basis for the issuance of a permanent restraining order in either case, and that both parties failed to carry their burden of proof that abuse occurred and failed to establish that issuance of a restraining order was warranted under the totality of the circumstances.  The court stated:  "I think at this point, I hear a lot of discontent, a lot of friction, but I think in this case I really have to agree with

9

Karla's counsel. We really need family counseling. You guys are getting on each other's nerves. I don't think it's gotten to the point where I'm prepared to issue a permanent order." The trial court denied both requests for a permanent order, "strongly urge[d]" the siblings to participate in cocounseling and try to work things out, and advised them "to get out of each other's faces and respect each other's space." The court made no findings or rulings regarding Maurice's property claim.

On October 25, 2019, Maurice filed a notice of intent to move for a new trial and subsequently moved for a new trial on the basis that the trial court improperly excluded video and photographic evidence and medical reports, and that there was insufficient evidence to dismiss his case. At the hearing on his motion for a new trial on November 13, 2019, the trial court directed Maurice to file an appeal and ordered the new trial motion off calendar.

Maurice timely appealed the trial court's dismissal of his DVPO request. He filed a separate notice of appeal from the trial court's order ordering his new trial motion off calendar; as discussed below we review this order based on Maurice's appeal from the underlying dismissal order.

## DISCUSSION

Maurice contends that the trial court's order dismissing his request for a domestic violence restraining order was an abuse of discretion and that no substantial evidence supports the court's decision. He also contends that the court specifically abused its discretion by precluding video and photographic evidence, by not giving him the opportunity to cross-examine Karla and Kristina, by ordering his new trial motion off calendar, and by not addressing his property restitution claim. We conclude that the

10

trial court did not address Maurice's property claim and must do so on remand.  In all other respects, we affirm.

## I.    Relevant Law

Under the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.), the trial court may issue a protective order enjoining a party from engaging in specific acts of harassment or abuse against a cohabitant or former cohabitant.  (Fam. Code, §§ 6211, subd. (b), 6218, 6322, 6340, subd. (a)(1).)  Under the DVPA, the court must " 'consider the totality of the circumstances in determining whether to grant or deny a petition for relief.' " (§ 6301, subd. (c); *Lugo v. Corona* (2019) 35 Cal.App.5th 865, 869.)

The standard of review for the grant or denial of a DVPO is abuse of discretion.  (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 820; *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1495; Fam. Code, § 6300, subd. (a).)  "We likewise review the trial court's failure to consider evidence in issuing a DVRO for an abuse of discretion."  (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226.)  " 'A trial court's exercise of discretion will not be disturbed on appeal unless, as a matter of law, an abuse of discretion is shown—i.e.,—where, considering all the relevant circumstances, the court has "exceeded the bounds of reason" or it can "fairly be said" that no judge would reasonably make the same order under the same circumstances.' " (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480, italics omitted.)  " 'So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it.' " (*Ibid*.)

In determining whether there is substantial evidence to support the trial court's decision to grant or deny a DVPO, we

11

resolve all conflicts in the evidence in favor of the prevailing party and indulge all legitimate and reasonable inferences in favor of upholding the trial court's order.  (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 31; *McCord v. Smith* (2020) 51 Cal.App.5th 358, 364.)  "If two or more reasonable inferences can be reasonably deduced from the facts, we have no authority as a reviewing court to substitute our judgment for the trial court's judgment."  (*McCord v. Smith,* at p. 364.)

An order denying a request for a restraining order under Family Code section 6200 et seq. is immediately appealable as an order refusing to grant an injunction.  (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 332; Code Civ. Proc., § 904.1, subd. (a)(6).)

## II. Substantial evidence supports the trial court's order, and it did not abuse its discretion in dismissing Maurice's request for a DVPO.

Here, the trial court concluded that the situation in the parties' household, although one of "friction" and "discontent," did not rise to the level of requiring any permanent protective order. Substantial evidence supports this determination with regard to Maurice's request for a protective order against Karla.

Resolving all evidentiary conflicts in favor of Karla as the prevailing party, the evidence indicates that on July 19, 2019, Karla engaged in a verbal confrontation with Maurice regarding the hot water heater during which he hit and grabbed her hand on the heater knob, that she struck Maurice's face in defense after he tried to trip her in the kitchen, blocking her passage, and the two had a "scuffle" in Maurice's bedroom that was overheard by Marc.  In March 2019 Karla engaged in a verbal altercation with Maurice regarding her daughter's medical care but denied

12

kicking him. Karla did not offer any contradictory testimony regarding the 2017 incident in which Maurice alleged she entered his room, berated him, and trashed his possessions, or regarding the 2018 incident in which Maurice alleged she spit water on him and verbally abused him, although she did testify that Maurice deliberately engaged in provocative and disrespectful behaviors in the home to incite her to anger and had hit her twice before in 2017 and 2018.

Under the totality of the circumstances, the trial court was within its discretion to conclude that these incidents and behaviors in the home did not rise to a level requiring a protective order. Because the trial court found insufficient evidence to justify a protective order in Maurice's favor, we can find an abuse of discretion in denying the DVRO only if " 'the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether [Maurice's] evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.) Here, there was ample discretionary room for a judicial determination that the uncontradicted evidence was insufficient to support a finding in Maurice's favor. The parties undisputedly had significant verbal conflict, and at least one physical incident by Karla against Maurice where Karla struck Maurice's cheek and pushed him into his desk. But even if there have been instances of domestic violence in the past, the DVPA does not mandate a restraining order be granted on that basis alone. Rather, the court must exercise its discretion to decide whether, even if past abuse has

13

been proven, the circumstances of the case warrant a DVRO to prevent future acts of domestic violence. (Fam. Code, §§ 6220, 6300.)

Maurice urges us to reconsider his version of disputed events along with his uncontradicted testimony and to conclude the trial court erred in ruling that the evidence was insufficient to justify a DVPO. However, on review, we accept as true the evidence in Karla's favor (see *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143), and we may not make factual determinations in place of those made by the trial court (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838). The testimony of a single witness, even a party, may alone constitute substantial evidence (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614), and to the extent Maurice argues that Karla's testimony was not credible, we must infer the trial court resolved questions of credibility in a manner that supports its findings and order (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762). In so doing, we cannot conclude that the trial court abused its discretion in finding that there was insufficient evidence to justify a protective order in favor of Maurice.

The trial court also was within its discretion not to consider Maurice's video and photographic evidence in its determination. The trial court has broad authority and a statutory duty to control trial proceedings, including the introduction and exclusion of evidence. (Evid. Code, §§ 320, 352.) This discretion includes "the power to rule on the admissibility of evidence, exclude proffered evidence that is deemed to be irrelevant, prejudicial or cumulative and expedite proceedings which, in the court's view, are dragging on too long without significantly aiding the trier of fact." (*In re Marriage of Carlsson* (2008) 163

14

Cal.App.4th 281, 291.) It is only when the trial court abuses this discretion " 'in such manner as to prevent a full and fair opportunity to the parties to *present all competent, relevant, and material evidence* bearing upon any issue properly presented for determination' " that a litigant's due process rights are implicated. (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1357; see Evid. Code, § 354 ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice"].)

Here, Maurice informed the trial court that he had a video recording of the 2017 incident when Karla entered his room, video evidence showing his face after Karla struck him on July 19, 2019, and a photograph of the desk Karla pushed him into on July 19, 2019. But such evidence had only cumulative value in that its admission would have added nothing to what was already before the trial court through Maurice's personal testimony regarding the 2017 incident, his testimony that he had a "small bruise" on his face after Karla hit him, and Marc's declaration that Maurice's face was visibly bruised in July 2019. Karla presented no testimony disputing Maurice's characterization of the 2017 incident, nor did she deny that she struck and bruised Maurice on July 19, 2019, or that she pushed him into his desk. Under the circumstances, Maurice suffered no prejudice from the court's decision not to view his video or photo evidence. (See *McCarthy v. Manhattan Beach* (1953) 41 Cal.2d 879, 895 [no prejudice to reject testimony with only cumulative value regarding undisputed facts].) Even were we to conclude the

15

trial court erroneously excluded Maurice's evidence, it is not reasonably probable that a result more favorable to him would have been reached absent the error.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

With regard to Maurice's argument that he was not given sufficient opportunity to cross-examine Karla or Kristina at the hearing, "the trial court has discretionary power over cross-examination, the exercise of which will be reviewed on appeal only if such discretion has been abused."  (*Melvin v. Berendsen* (1935) 7 Cal.App.2d 389, 391–392.)  Maurice contends that the trial court abused its discretion by not affirmatively offering him the chance to cross-examine the witnesses.  However, he did not object at the hearing to the scope of cross-examination or request to question the witnesses.  " 'An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below.' "  (*Children's Hospital & Medical Center v. Bonta* (2002) 97 Cal.App.4th 740, 776.)

Likewise, although Maurice also contends that medical records and police reports should have been considered, he did not offer any records or reports into evidence at the hearing.  The fact that Maurice is appearing in propria persona makes no difference.  The rules of civil procedure "apply equally to parties represented by counsel and those who forgo attorney representation."  (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985.)  A self-represented litigant is not entitled to "special treatment" (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 524) but is held to the same standards as a party represented by counsel (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247).

### III. No Prejudice Resulted From the Trial Court Ordering Maurice's New Trial Motion Off Calendar.

The trial court ordered Maurice's motion for new trial off calendar after directing him to file an appeal.  As an initial matter, such an order in itself is not equivalent to a denial of the new trial motion.  Although an order dismissing a motion for a new trial may be construed as an order denying the motion (*Hughes v. De Mund* (1924) 70 Cal.App. 265, 267), " ' "[o]ff [c]alendar" is not synonymous with "dismissal."  "Off" merely means a postponement whereas a "dismissal" in judicial procedure has reference to a cessation of consideration' " (*R & A Vending Services, Inc. v. City of Los Angeles* (1985) 172 Cal.App.3d 1188, 1193–1194).

However, where, as here, no order on a motion for new trial is entered within 75 days after the moving party's notice of intention, the motion is ultimately deemed denied by operation of law.  (Code Civ. Proc., § 660, subd. (c).)  The filing of a notice of appeal from the underlying judgment does not affect the procedural operation of a motion for new trial (*Neff v. Ernst* (1957) 48 Cal.2d 628, 634), and "denial by operation by law of a motion for new trial is reviewable on appeal from the judgment" (*Weisenburg v. Molina* (1976) 58 Cal.App.3d 478, 486; see *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 19 ["an order *denying* a motion for new trial is not independently appealable and may be reviewed only on appeal from the underlying judgment"]).  "The denial of a new trial motion is reviewed for an abuse of discretion, except that a trial court's factual determinations are reviewed under the

17

substantial evidence test." (*Minnegren v. Nozar* (2016) 4 Cal.App.5th 500, 514, fn. 7.)

Here, all of the grounds raised in Maurice's motion for new trial were incorporated in his contentions on appeal, and we have given full consideration to them in our discussion of the issues raised by this appeal. We therefore conclude that no prejudice resulted to Maurice from the trial court's decision to take the motion for new trial off calendar.

### IV. The Trial Court Erred By Not Ruling On Maurice's Property Claim.

Although the trial court expressly ordered that Maurice's property claim would be determined at the October 15, 2019 hearing, it failed to do so. At the hearing, Maurice stated in opening, "I'm also seeking restitution in the amount of $500 for damage to stolen property and lost wages." However, the trial court did not thereafter take testimony or make any ruling regarding the property claim. Maurice is entitled to a determination of his restitution claim on remand.

**DISPOSITION**

The case is remanded to the superior court for the limited purpose of a determination of appellant Maurice Nickelson's property restitution claim in accordance with this opinion. In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.


19